ROGERS having obtained a judgment against Mills, iséued execution thereon, which was levied upon a tract of 6,108 acres of land, by the sheriff, and Rogers became the purcháser, at the price of g13. Mill's afterwards moved the court to set aside the sale ; but the court overruled the motion, and Mills excepted, and has brought the case to this court by writ of error.
Various objections were taken to the sale. Amongst these, it was alleged that Rogers had procured the sale by fraud and covin between him and other persons, who attended at the time and place of sale, and were prevented from bidding and becoming purchasers, by reason of agreements and promises of favor and parts of the land, if they would not bid against Rogers ; and particularly, that Rogers did prevent Gabriel Buckner from bidding for the land, by promising Buckner, who had attended with a view of purchasing, that Rogers would relinquish, at low prices, to him, so much of the land as interfered with William Buckner, who held under an adverse claim.
On the trial of the motion, Buckner swore, that he went to the place of sale for thfe purpose of purchasing the land, and when he got there, Rogers took him out and asked him if he had come to bid ; and.being answered in the affirmative,.Rogers proposed to him not to bid, and that if he (Rogers) bought, he would let Buckner have what interfered with his father, William Buckner’s claim, for nothing. Buckner refused to make the contract, conceiving that a contract to have the interference for nothing, would not he binding j but he told Rogers, that if he would convey the interference to William Buckner, his father, he would not bid against Rogers, and would pay half the purchase *218 money; and, owing to the agreement with Rogers, Buckner did riot bid. Several other witnesses stated-, that in repeated conversations respecting the purchase of the land, they had heard Rogers' say, that the way he got the whole land, was, that when he saw Gabriel Buckner had come to bid for the land, he took him out and proposed to Buckner hot to bid, and that he, Rogers, would let Edckner have part of the land.
Whether conduct of this sort, on the part of the purchaser of land sold under execution, ought to vitiate the sale, is, as far as we are aware, a new point, Which has never occurred in the courts, either o'f England or America ; and it must, therefore, be decided by this court, upon principle, without the aid of the light which might be shed on it from its discussion by other tribunals.
Such conduct on the part of the purchaser, certainly cannot bé reconciled with the strict rules of moral propriety. Its obvious tendency is to depress the price of the property sold, and thus to injure the debtor. To depress the price of the property, is, in fact, the very object which the purchaser in such' case has in view, and lie can be influenced by no other motive than that of enriching himself, to the prejudice of the debtor. It is evident,' theréforc, that bis conduct cannot be justified'on the score of morality ; for it is the motive of the agent, and the tendency of an action, by Which alone we can determine its moral quality.
If is true, that the law will not notice every violation of tiie rules of morality ; for legal obligation is ^necessarily more circumscribed than moral duty. Sometimes, the injury done by a breach of moral duty, is so evanescent and perishable, or’ so minute and trivial, as not to equal the inconvenience of applying a legal remedy; and s’tich cases come within tlie maxim, de minimis nofi curat lex ; and sometimes the injury may be of such a character, that the person prejudiced by it might have guarded against it, with the exercise of that prudence which all men are required to use in their own affairs ; and then the case conies within the maxim, vigilanübus non dórmientibús jura sulrserviunt. But, except’ in cases of those two descriptions, for every injury done by a breach of moral duty, the laws of all countries should, and those of this country do, afford a remedy 5 and, .most clear. *219 ly, the present cage doeg not come within either of those two descriptions of cases ; for the injury done to the debtor, is not less than if the price of the property sold had been depressed by any other covinous or sinister means ; and, from the very nature of the case, it is impossible to suppose that the debtor could, by any ordinary vigilance, have guarded against it.
The judgment must, therefore, be reversed with costs, and the cause be remanded, that the sale and conveyance may be annulled and set aside, and the return of the sheriff quashed.