Mobile Cotton Press, &c. *vs*. Moore & Magee.

THE MOBILE COTTON PRESS AND BUILDING COMPANY *vs*. MOORE & MAGEE.

1. A party injured by the improper execution of a *fieri facias*, may obtain redress, on motion, to the court from which the writ issued.

2. A sale of land will be set aside, where the sheriff is guilty of a mistake, irregularity, or fraud, to the prejudice of either party, or a third person.

3. So, the misrepresentation, or fraud, of a purchaser at sheriff's sale, furnishes just ground for invalidating the sale.

4. And the court will set aside the sale, though the sheriff has executed a deed to the purchaser.

5. *Quere*—Can the court go so far in declaring the sale to be invalid, as to direct the purchaser to deliver up the sheriff's deed? Whether a court of law may do this or not, is unimportant to the rights of the parties, as it may declare the *deed* to be *void*, and this will as effectually destroy *it*, as if it were cancelled *in fact*.

Error to Mobile County court.

Rule upon the sheriff, &c.

The plaintiffs in error moved the County court of Mobile upon affidavits filed, for a rule to be addressed to the defendants, requiring them to show cause why the sale made by Magee, as sheriff, to Moore, under an execution issued from that court, at the suit of Edward Harding, against the plaintiffs in error, should not be set aside, and the conveyance (if any) to the purchaser, delivered up and cancelled. The rule was accordingly granted, returnable on a day therein expressed, and duly served on the defendants.

Several affidavits were filed, to sustain the motion, which we will notice in the order in which they are found in the record. Lyman Gibbons, states that he was one of the attorneys for Edward Harding, *in the* case against the plaintiffs in error—that judgment was obtained therein, at the June term, eighteen hundred and thirty-eight, of the County court of Mobile; after which event, the deponent assumed the entire control and management of the claim. That soon after the adjournment of the court, an execution issued on the judgment, which he directed to be levied on the *new Hotel,* at the northeast corner of Government and Royal streets—the execution was levied on the *Hotel,* which was regularly advertised by the sheriff of Mobile, and was to have been sold on the first Monday in October, eighteen hundred and thirty-eight. That after the advertisement was made, the deponent was called upon by Judge Hitchcock, one of the corporators of the company, who requested that the sale of the Hotel might be postponed ; to which deponent assented, and a postponement was agreed on for one month.

The deponent further states, that the property was not again advertised for sale, until the fourth day of January last, when it was understood between himself and Judge Hitchcock, that the property should be re-advertised, in order to keep alive the lien of the execution, but without intention to have a sale, unless some unexpected exigency should arise, and then Judge Hitchcock should be duly notified that a sale would take place. In the verbal order which the deponent gave to the sheriff, to re-advertise the property, he endeavored to convey to him the

idea, that the property should not be sold on the day specified in the advertisement, without special orders so to do. The deponent, after having the matter understood (as he supposed) with the sheriff and Judge Hitchcock, gave it no farther attention—nor was he aware that the sheriff intended to offer the property for sale on the first Monday of February, as he in fact did. Had the deponent been aware of such an intention, he would not have permitted the property to have been sold; and, in any event, he felt bound to notify Judge Hitchcock, before a sale took place, and would then, for the protection of his client, have bid for the property the amount, or nearly so, of the judgment.

Immediately after the sale, the deponent was informed by Judge Hitchcock, that the property had been sold, and he forthwith repaired to the sheriff's office, where he made it known, that it was not his intention to have had the property sold, but the sale was made under a mistake. When deponent made this statement, he found the sheriff's clerk preparing a *deed of conveyance* to the purchaser.

Henry Hitchcock deposes, that the facts stated by Mr. Gibbons, so far as they disclose what personally transpired between himself and the deponent, are true.

He further states, that a day or two before the first Monday in January last, the sheriff called on the deponent, and asked him if any arrangement had been, or would be made to prevent a sale of the Hotel; upon which the deponent informed him of the arrangement with Mr. Gibbons, and stated that he was then negotiating a loan in New York, on the faith of that property,

from which the judgment was to be satisfied—that he was expecting to hear from New York on the subject, in a short time, and that the sale would have to be further postponed. Whereupon the sheriff replied, that he would postpone the sale on his own responsibility. The deponent, however, requested the sheriff to see Mr. Gibbons on the subject, and left him—the deponent then went directly to Mr. Gibbons, (as he was not disposed to allow the delay to rest on his statement *alone* to the sheriff,) and requested him to see the sheriff, and be sure and have the sale postponed, which he promised to do. The sale was postponed, and the deponent believed that things would remain in that situation until further orders from New York, and that under any circumstances, the property would not be sold until notice was given to him by Mr. Gibbons. He did not again see Mr. Gibbons or the sheriff, on the subject, and did not suppose the sale would take place on the first Monday in February. Of the proceedings on that day, the deponent knew nothing, till informed by Mr. Isaac H. Erwin, that the sheriff was selling the Hotel at the court house. Upon receiving this intelligence, he immediately went from his office to the court house, and on reaching there, was informed that the premises had been sold to William Moore, for *seventy five dollars.* He then informed both the sheriff and Moore, that there was a mistake in the matter—no sale should have been made—and requested that nothing further might be done, till he could see Mr. Gibbons. This occurred within a few minutes after the sale— while the parties were on the stand—before any money had been paid, or deed executed ; and immediately there-

after, the deponent proceeded to Mr. Gibbons, informed him what had been done, requested him to see the sheriff, and stop the execution of the deed. The deponent further states, that the sum at which the premises were bid off, is grossly inadequate, when compared with its value, and that if he had been informed that a sale would have taken place, he would have attended, and bought in the property.

In the affidavit of William P. Brown, it is stated that the New Government street Hotel, on the north east corner of Government and Royal streets, was worth, as it then stood, *at least* two hundred thousand dollars, according to the best judgment of the deponent. The deponent is informed, and believes that the mortgage and other liens and encumbrances on that property, do not amount to more than *one hundred and twenty thousand dollars*, so that the premises are worth over and above all liens, *at least seventy five thousand dollars.*

Isaac H. Erwin deposes, that he was present at the court house of Mobile county, on the first Monday of February, eighteen hundred and thirty-nine, when the sheriff of that county offered at public sale, the property situated at the north east corner of Government and Royal streets, commonly known as the Government street Hotel. The property was offered, as advertised by the sheriff, under an execution in favor of Edward Harding —the deponent heard the terms and conditions of sale, and made the first bid—no statement was made, either by the sheriff or crier, that the property was encumbered, yet deponent knew at the time, that there were heavy encumbrances on it, amounting to more than one hun-

dred thousand dollars, on which there have since been decrees of foreclosure.

Deponent, on making the first bid for the property, and finding that some one bid a larger sum, went immediately to the office of H. Hitchcock, who he knew to be interested in the same, and enquired if he was aware that the property was about to be sold; to which he replied that it was a mistake, as it was agreed between the parties in interest not to sell it. The deponent, accompanied by Judge Hitchcock, returned immediately to the court house, and found that the Hotel was just struck down to Mr. William Moore, at *seventy-five dollars;* Judge Hitchcock enquired of Mr. Moore, if he had bid it off, to which he answered that he had; Judge Hitchcock then remarked to him, in the presence of the sheriff and the crowd then present, that the sale was made under a mistake—the parties had agreed not to sell the property. This occurred within ten minutes after the sale, as deponent believes, and before Moore, the sheriff, or the bidders generally, had left the court house door. This deponent believes the property well worth *two* hundred thousand dollars.

The defendants severally shewed cause *against* the rule, by submitting to the court their answers, which they verified by their respective oaths.

The defendant Moore saith, that he was present at the court house door of Mobile, when the sheriff of that county offered and exposed to sale, certain premises situate at the north east corner of Government and Royal streets, known as the Government street Hotel. That he understood from the sheriff's proclamation, that the

premises were exposed to sale under an execution theretofore issued from the County court of Mobile, on a judgment there rendered in favor of Harding, against the plaintiff in error. This defendant also understood from the sheriff, that the property had been regularly levied on, and advertised for sale according to law, and knowing of no good reason why it might not be sold, and a good title thereto acquired, as the defendant in the execution was in possession of the same. Under that impression, this defendant became the highest bidder, and of course, the purchaser of the property—paid the purchase money, and received the sheriff's deed therefor, on the day of sale—all of which occurred previous to any notice by Judge Hitchcock, or any other person, that the sale was not fair, legal and *bona fide;* nor did he receive any notice from, or have any conversation with, Judge Hitchoock, other than as follows: soon after the property was bid off, by this defendant, Judge Hitchcock came to the place where the sale was made, and where the sheriff and defendant were standing, and enquired in the hearing of the latter, if the premises were sold, and on being answered in the affirmative by the sheriff, he addressed this defendant, saying that he understood he was the purchaser, and enquired what he would take for his bargain. Judge Hitchcock then remarked, that there was some mistake; that Mr. Gibbons had promised to give him notice when the premises were to be sold, and that he had intended to have been present at the sale. From none of these remarks of Judge Hitchcock, did this defendant infer that the sale was irregular or illegal—nor was he advised that the same was alleged to

Mobile Cotton Press, &c. *vs.* Moore & Magee.

be illegal or irregular, until he was served with the rule, to show cause why the sale should not be set aside.

The defendant Magee answers, that after the property was bid off by Moore, he, as the sheriff of Mobile county, made, executed, and delivered to Moore, a deed for the same, before he was advised that the sale was alleged to be other than fair, legal and *bona fide*. Nor did he hear any thing from any person in relation to the sale other than this, viz : soon after Moore had bid off the property, Judge Hitchcock came to the court house door, and enquired if the property was sold—upon being answered in the affirmative, he remarked that there was some mistake—that Mr. Gibbons had promised to notify him of the sale, and that he had intended to be present at the sale. He remarked further, that he would go and see Mr. Gibbons, but this defendant heard nothing further from any one in relation to the sale, until he was about to execute a deed to Mr. Moore, when he was told by a gentleman employed by him in his office, that Mr. Gibbons had been there to see him in relation to the sale, but without saying any thing further, or whether Mr. Gibbons wished the execution of the deed postponed or not. Moore was not present when this conversation was had, nor did this defendant know for what purpose Mr. Gibbons had been to his office, other than he has already stated ; nor had he any reason to believe that he wished to prevent the execution of the deed.

This closes an abstract of the showing made for and against the rule. The court discharged the rule, and rendered judgment for costs, against the plaintiff in error, in favor of the defendants. On motion of the plain-

tiff, the affidavits and answers recited above, were made a part of the record, and exception taken in due form to the decision of the court. And thereupon the plaintiff prosecuted an appeal to this court.

*J. A. Campbell*, for plaintiffs in error.
*Dunn*, contra.

COLLIER, C. J.—It is well settled at common law, that courts of judicature possess a controlling power over the acts of their officers, which it is their duty to exercise in advancement of justice. Thus, if a sheriff is guilty of an irregularity in his proceedings upon an execution, to the prejudice of either party, or a third person, the court will either set aside, or correct the act complained of. As, for example, if a sheriff, in executing a writ of *habere facias possessionem*, deliver to the plaintiff the possession of other or more land than he has recovered, the court, on motion, will so modify the act, that complete justice be done.

In Saul vs. Dawson, (3 Wils. Rep. 49,) the plaintiff, as tenant in common, recovered possession of *five eighths* of a cottage. A writ of possession was executed by the sheriff, who turned the tenant out of possession of the whole, and locked up the door. The court held, that the writ ought to have pursued the verdict, and made a rule upon the sheriff and the lessor of the plaintiff, to restore the tenant to the possession of *three eight parts* of the premises—remarking, that if justice was not thus administered, the tenant would be put to another ejectment—(See also 1 Burr. Rep. 629; 5 Burr. Rep. 2672; 1 Caines'

R. 500; 5 Johns. R. 366.) It may be true, that in order to do justice, greater liberality is allowed in ejectment than other actions, yet the principle on which courts supervise the acts of their officers, is alike applicable to all; and as the question is *res integra* in this court, it may be well to review the authorities in regard to it.

In Ryerson vs. Nicholson, (2 Yeates' Rep. 516,) a motion was made to set aside the sale of the defendant's land, which had been made by the sheriff under a *fieri facias*, on the ground that he had sold several distinct parcels of land together. The court considered, that they had the right to entertain the motion, on the ground that the sheriff was its officer, and justice required that the proceeding should be summary in such a case. They further held, that it was the duty of the sheriff to get the highest sums for the lands of unfortunate debtors, and not to permit the wealthy alone to become the purchasers, to the exclusion of persons less affluent. That the highest price might be obtained, the general rule required that different lots of ground, houses, or parcels of land, should be sold separately; unless the parties agreed to a different mode of sale, or the aggregate sum to be obtained, would be increased by selling several lots together. As the facts of the case did not disclose any reason for a departure from the general rule by the sheriff, the sale was set aside—(Rawley vs. Brown, adm'r, 1 Binney's R. 61, is to the same effect.)

The same court, in Friedly vs. Scheetz, (1 Sergeant & Rawle's Rep. 162,) say, if any fraud was practised on the purchaser, or any mistake in the description of land, sold under a *fieri facias*, application should be made to

Mobile Cotton Press, &c. *vs.* Moore & Magee.

the court to which the writ is returnable, to set aside the sale.

In the case of the Ontario Bank vs. Lansing, (2 Wend. R. 260,) the plaintiff in execution inadvertently bid a sum less than its amount; the sale, on his application, was set aside, and a re-sale ordered, on his stipulating to bid at least as much at the re-sale. The motion, in this case, was sustained, on the ground that the plaintiff might be prejudiced, if a mortgagor or a junior judgment creditor should seek to redeem the premises, which, it seems, had been mortgaged previous to the sale.

Where a motion was made to set aside a sale under execution, on the ground that real estate worth ten thousand dollars, was sold to satisfy a judgment of one hundred dollars, it appeared that the premises were so situated, that a portion which would probably have brought more than enough to satisfy the judgment, could conveniently have been sold separately. The court held, that the sale of the property *en masse,* under the circumstances, clearly proved it to be fraudulent, and granted the motion—(Groff vs. Jones, 6 Wend. Rep. 522.) And in Jackson vs. Roberts, (7 Wend. Rep. 88,) the court remark, that "a party, who may be injured by the mistakes of a sheriff, can have relief by a summary application to the court under whose authority the officer acts, or through the medium of a court of equity; and it is much better that he should be confined to these modes of redress, than to render all titles derived from judicial sales doubtful, and subject to be defeated, by allowing the written instruments by which they are evidenced, to be attacked collaterally, by parol evidence."

9 P 87

The Court of Appeals of Maryland, in Arnott & Copper vs. Nichols, determined that a court possesses an equitable control over its executions, and may, on motion, quash the return of a sheriff—(1 Har. & Johns. Rep. 471.) And the same court, in Nesbit vs. Dallam, (7 Gill & Johns. Rep. 512,) set aside, on motion, a sale made *en masse*, of divers lots of ground situated in the same town, but separate and distinct from each other, remarking, that such a sale is *prima facie* void, and he who seeks to sustain it, must show its justice and expediency. In this case, it also appeared, that property sold for a sum not exceeding one fifth of its intrinsic value—on which the court remarked : "such a disparity between the price and value of the property sold, furnishes intrinsic evidence of the irregularity, impropriety, or unfairness of the sale ; and connected with any of the several omissions of duty, or indiscretions of the sheriff before referred to, leaves not the court a shadow of discretion, as to vacating this sale."

In Kentucky, a statute was passed on this subject, in eighteen hundred and eleven ; so much of which as is pertinent, is in these words : " and all sales by color of any execution, had or made by covin, fraud or collusion, between plaintiff and sheriff, or other officer acting under such execution ; or between defendant and such officer ; or between any purchaser or any such officer, or in any wise contrary to the provision hereof, may be set aside, by motion to the court having proper jurisdiction thereof, to be commenced within one year, by any person or party aggrieved thereby, by serving a notice of the intended motion," &c.—(1 Morehead & Brown's Laws of

Ky. 628.) The courts of that State, have not considered this statute as impliedly inhibiting motions to set aside sales, for all causes not embraced by it; but the reverse has been held to be the law. Thus, in Carlile vs. Carlile, (7 J. J. Marshall's Rep. 625,) it appeared that the sheriff, on the sale of a tract of land, announced to the bidders, that a greater amount was due in virtue of the execution, than really was due by it, and the land sold for the amount of the execution; the sale, on motion, was set aside. The court held, that there might be other causes than those mentioned in the act, and to motions for quashal for any of those other causes, the statute does not apply—(See also Cox vs. Joiner, 4 Bibb's Rep. 94.)

In Stockton vs. Owings, (Litt. Select Cases, 256,) it was held, that inadequacy of price is not *per se,* a sufficient cause for setting aside a sale of land under execution, but coupled with other circumstances, it may be—(See further, Hansford vs. Barbour, 3 Marsh. Rep. 515; Hart vs. Bleight, &c. 3 Monroe's Rep. 273; 3 Litt. 128; Bleight's heirs vs. Tobin, 7 Monroe's Rep. 617)—In which latter case, it was decided, that the fact that the attorney for the plaintiff, who was concerned in the purchase, having sent the execution to another county, where a large quantity of land was sold in haste, &c. is strong evidence of fraud. . And fraud was also inferrable, from the purchasers having purposely misinformed a person who intended to purchase of the day of sale.

And in Knight vs. Applegote's heirs, (3 Monroe's Rep. 388,) the clerk omitted to notice on the *fieri facias,* the credit for about half the judgment entered at its foot, and

the sheriff raised the entire sum by the sale of land, the title of the land, it was considered, would not pass to the purchaser. So, where the plaintiff in an execution prevents other persons from bidding for land levied on, by promising if they would not, to purchase it himself, and sell to them at a low price, such parts as they might 'want, and in consequence of such negotiation, purchases for less than its value, the sale would be set aside on motion—(Mills vs. Rogers, 2 Litt. Rep. 217.)

From the authorities cited, we make these deductions: 1. A party injured by the improper execution of a *fieri facias*, may obtain redress, on motion to the court from which the writ issued ; 2. That a sale of land will be set aside, where the sheriff is guilty of a mistake, irregularity, or fraud, to the prejudice of either party, or a third person ; 3. So, the misrepresentation, or fraud of a purchaser, furnishes just ground for invalidating the sale.

In the case at bar, it is insisted, that conceding there was no fraud on the part of the defendants in error, yet the sale was made by the sheriff, under a clear mistake, against the wishes, and to the injury of both parties to the execution ; and that of consequence, it should not be allowed to divest the title. The counsel for Harding, who assumed the exclusive direction of the judgment, states explicitly in his affidavit, that it was the intention of himself and the gentleman who represented the defendant in the execution, that the property should not have been sold under the advertisement made in January, unless directions were given by him to the sheriff to sell—that in the verbal order which he gave to the sheriff

Mobile Cotton Press, &c. *vs.* Moore & Magee.

to advertise the property, he endeavored to convey to him his wishes on the subject: supposing the matter understood between the sheriff, Judge Hitchcock and himself, he gave it no further attention. Had he have known that it was proposed to sell the property on the first Monday of February, he would not have allowed it—in any event, he felt bound to notify Judge Hitchcock of the sale, and would himself have bid the amount of the execution, or nearly so. All this, so far as it refers to Judge Hitchcock, is confirmed by him, who, in addition, charges by his affidavit, the sheriff, with a knowledge of the arrangement between Mr. Gibbons and himself. The facts from which fraud (either in the sheriff or the purchaser) is inferrable, is explicitly denied in their answers.

Considering the case upon the facts which are not denied by the answers, and we think it clearly appears, that the sale was made by the sheriff, either under a misapprehension of duty, or else a misconception of the arrangement between the parties, which they endeavored to communicate to him. In either view, the result would be the same—the sale should be set aside.

That the defendant in the execution has been injured, greatly injured, by the sale of the Hotel, is a fact beyond all controversy—property of the value of *seventy five thousand dollars,* above all liens, has been sold for the comparatively trifling sum of *seventy five dollars.* Not only the defendant, but, in all probability, the plaintiff,would be prejudiced, if the sale were allowed to stand, as there may be no other property which can be subjected to the satisfaction of the execution.

As this case may be disposed of, without fixing *mala*

*fides* upon any person connected with it, we will forbear to consider the argument drawn from the great disparity between the sum for which the property sold, and its intrinsic value—the haste with which the execution of a deed succeeded the sale, notwithstanding the notice from the parties, that there was a mistake, &c.

It was argued for the defendants, that even admitting that the sale might have been set aside before it was perfected by a *deed*, yet having been thus consummated, the application to the equitable control of the court, comes too late. This argument, in our opinion, cannot be maintained. The sale was made, as we have seen, against the direction of both the parties to the execution, at a time when they were not present, and cannot be allowed to divest the title. It is the levy and sale which is to give a title in equity, and which, if regular, may be perfected; the sheriff's *deed* merely evidences these facts, and makes that a legal, which before was an equitable interest.

It cannot be that the *deed* possesses such potency, as to give validity to a title which was previously invalid. It must be remembered, that the sheriff, in himself, *is a mere agent of the law*, not disposing of his own property, but only such interest as the defendant in execution was entitled to; hence his *deed* cannot operate a confirmation of title, beyond what equitably passed by the *levy and sale*. If a party injured, might *then* object to the proceeding, as being in violation of law, his remedies must still remain unimpaired.

Suppose the execution of the deed should bar the application for relief, parties injured would often be reme-

Mobile Cotton Press, &c. *vs*. Moore & Magee.

diless. They might never hear of the levy and sale, until long after it was made—and besides, the sheriff might execute a *deed*, before an injunction could be obtained, *in despite of remonstrances to the contrary*.

In none of the cases cited, was it objected to the motion, that the purchaser had obtained a *deed*, though doubtless, the laws of the States in which the decisions were made, authorise the sheriff to furnish to him some written *indicia* of a sale and purchase. The case cited from 7 Wendell, shows such to be the law in New York, and seems to intimate that a *deed* interposes no difficulty.

Whether the court should have granted the latter part of the motion, viz., have directed the conveyance by the sheriff, to be delivered up to be cancelled, may be questionable. We have not been able to find any case in which the motion went so far. The jurisdiction of the court results from the sheriff being its officer, and the reason why a notice is given to the purchaser is, that he may defend his interests in the proceeding against the sheriff—he is not obliged to appear, and if he does not, is not in contempt, but the court will decide upon the motion in his absence. Now, as the court only acts summarily, with a view to ascertain the regularity of the sale, &c.—this being determined to be invalid, and so declared, can the court go farther, and direct the purchaser to deliver up the sheriff's deed? We incline to think, that though this would be competent for a court of equity, yet it would be going beyond the just powers of a court of law. If such an order be legal, to disobey it would be illegal, and subject the purchaser to process for

contempt.   At  any rate,  it is wholly unnecessary—the sale may be set aside, and the deed declared to be void, and this will as effectually destroy the *deed*, as if it were cancelled *in fact*—the judgment on the motion will furnish record evidence of the invalidity of the deed.

We are, then, of opinion, that the motion should be granted to the extent indicated, on the plaintiff in error paying to the defendant Moore, the sum at which he bid off the property, with interest thereon since the day of sale.   That the County court may administer the law as we have laid it down, its judgment is reversed, and the case remanded.