## McCOLLUM v. HUBBERT AND CAPLE.

1. When a party whose land has been sold under execution, delays more than four years, before he makes application to set it aside, during a large portion of which period, he has been engaged in litigating the title, with the purchaser, a much stronger case will be required to warrant the interference of the court, than if a prompt application had been made.

2. A sheriff having executions in his hands, made a levy on land, and went out of office, *without making sale of it.* The execution on which the levy was made coming to the hands of his successor after his qualification, he struck the name of his predecessor out of the levies, and inserted his own, altering the date to correspond with his reception of the execution, and sold under this levy. Held, that the sale was not affected by the previous levy of his predecessor.

3. A fraud which will justify the court on motion, to set aside a sheriff's sale of land, must exist at the time of the sale. Subsequent irregularities will not have that effect, but the party will be remitted to his rights in another forum.

Error from the Circuit Court of Fayette County.

This was an application upon the motion of the plaintiff in error, to set aside a sale made of a tract of land, the property of the plaintiff, by one R. H. Poe, then sheriff of Fayette county, and which had been purchased, as was alledged, by defendants, Hubbert and Caple.

A rule was granted by the circuit court, directed to said defendants, requiring them to show cause why the sale should not be set aside, and the execution under which it was made, and the levy thereon quashed. Upon the trial, in the court, the parties having responded to the rule, and various affidavits having been taken, the circuit court, refusing to quash the execution or levy, or to set aside the sale, discharged the rule. To reverse his decision, the plaintiff brings the case to this court, and assigns for error, that the sale complained of was irregular, fraudulent and voidable, and should have been set aside. The facts of the case appear in the opinion.

PORTER & BRODIE, for the plaintiff in error, argued—

1. That the sale was irregular, the execution having been received by one sheriff, levied by him, and then turned over to his successor. Bondurant, et al. v. Buford, 1 Ala. R. 360 ; Allen on Sheriff, 78 ; Watson on Sheriff, 189.

2. That the sale was void, because the sheriff was a purchaser. Ormond v. Faircloth, 2 Haywood, 336 ; Cameron v. Norwood, 1 Murphy, 35 ; Mills v. Goodsill, 5 Conn. Rep.

475; 4 Cow. 717; Forward & Creagh v. Savage, 9 Ala. 959; 4 Deav. R. 126. That Poe, the sheriff who sold, became interested in the land before he made a deed, and the title dates from the deed. 1 Rich. Eq. R. 340. 3. The sale was fraudulent, as against public policy, and in such case, a *particeps fraudis* may avoid the deed. 4 Kent, 467; 11 Ves. 526; 13 Ib. 588. But McCollum was not in *pari delicto*. 4. Fair bidding was prevented by a conspiracy. 9 Ala. R. 943. 5. The smallness of the price paid, is a sufficient evidence of fraud. 1 Mum. R. 149; 11 Dallas, 221; Mobile Cotton Press Co. v. Moore, et al. 9 Por. 679; Abercrombie, et al. v. Conner, 10 Ala. R. 294.

E. W. PECK, contra. 1. The motion was properly denied because the necessary parties were not before the court. In order to quash the execution, the plaintiff therein must be made a party. The sheriff also should be a party to a motion to quash the levy, and set aside the sale.

2. The motion was multifarious, or rather, there was a misjoinder. A motion to quash *fi. fa.* and levy and set aside a sale, involving the interests of different parties, may not be joined.

3. The motion was properly refused on the merits. There was no evidence to impeach the transaction for fraud, and the agreement to permit the plaintiff to redeem, was entered into *after* the sale, which cannot have the effect to render it invalid.

CHILTON, J.—In Mobile Cotton Press Co. v. Moore and McGehee, 9 Porter's Rep. 692, this court determined, that a party injured by the improper execution of a *fieri facias*, may obtain redress on a motion to the court from which the process issued. 2. That a sale of real estate will be set aside, when the sheriff is guilty of a mistake, irregularity or fraud, to the prejudice of either party or a third person, and that the misrepresentation, or fraud of a purchaser furnishes ground for invalidating the sale.

The particular time within which the party injured may invoke the action of the court to set aside a sale, has not been very definitely settled by the previous adjudications of this

court. In the case of Hubbert, et al. v. McCollum, 6 Ala. Rep. 221, this court say, the motion must be made in a seasonable time—most regularly, at the first term succeeding the return of the process, but add, there may be circumstances under which the court should interfere at a subsequent term, especially, if there are sufficient reasons for not having sought its action earlier. In Abercrombie, et al. v. Connor, 10 Ala. Rep. 293, which was a motion to set aside a sale of lands, it is said, "upon a sale of lands under execution, a mere right of action passes to the vendee, but where personal property is sold, the possession itself is delivered. In the latter case, the application to set aside the sale must be immediate, or at least, as soon as reasonably may be, or the delay must be excused, but where lands are the subject, the motion may be made any time before the purchaser takes possession or recovers it by suit, unless the possession is acquired in so short a time after the sale, that an application cannot be conveniently made. The question recurs in the case before us, has the plaintiff in error brought himself within the influence of either of these decisions, as to the time of making his application?

The land was sold on the 5th day of October, 1840; the motion to set aside the sale, was made on the 14th day of October, 1844, more than four years from the date of the sale. The plaintiff was fully advised of the intention of the purchasers to assert their claim to the land, by their instituting suit against him for its recovery on the 22d of April, 1841. Having litigated with them their right to a recovery in that action some three years and six months, at a considerable cost, as we must suppose, to the parties, he sets on foot the present motion, which, if it could be sustained, would promptly have terminated the whole controversy. We are not prepared to say, that under the influence of the former decisions of this court above referred to, when applied to the facts, as we shall presently notice them, the judgment of the circuit court should for this cause be affirmed, but we feel constrained to add, before dismissing this branch of the case, that the law does not regard such delay with indulgence, and that the inference of acquiescence on the part of the plaintiffs in any supposed irregularities or fraud in the sale, may well

JANUARY TERM, 1848. 293

McCollum v. Hubbert and Caple.

be drawn, requiring stronger proof to warrant the interposition of the court.

We will next examine the case, upon its merits, as presented by the affidavits and documentary proof. It appears from the proof that the land in controversy was sold by one Poe, the sheriff of Fayette county, on the 5th October, 1840, under three several executions upon judgments rendered in the circuit court of Fayette county, one in favor of James A. McLester, assignee, &c. for the sum of $50 82; another in favor of T. & R. Simonton, use of James A. McLester, for the sum of $73 29, and the third in favor of James Hogan, administrator of Reuben Jones, for the sum of $3,655 66, which last named judgment was rendered against the said plaintiff in error and Samuel Caple, one of the defendants in this cause. To this judgment was superadded the sum of $365 05½, as damages upon its affirmance in this court, and the *fi. fa.* was issued against McCollum, the principal, Caple, his surety in the original judgment, and Newman and Joseph McCollum, the sureties on the writ of error bond. The executions upon these judgments were placed in the hands of the defendant Hubbert; the two first named, on the 21st May, 1840; the Hogan execution, on the 20th July, 1840, the judgment having been affirmed in June, 1840. Hubbert being then the sheriff of Fayette county, levied them on the land in controversy. It further appears, that on the first Monday in August, 1840, Poe was elected sheriff, and gave bond and entered upon the duties of said office, on the 10th day of August, 1840. That the lands not having been disposed of, the *fi. fas.* were placed in the hands of Poe on the 28th August, 1840, either by the clerk of the court, or by his predecessor, Hubbert, who thereupon struck out the name of Hubbert, inserting his own name in the levies, and dating them to correspond with the time of the reception by him of the *fi. fas.*

It is proper at this point to consider an objection raised by the counsel for the plaintiff in error. It is insisted, that after the executions had been levied by one sheriff, they could not be transferred by him to his successor, and the case of Bondurant v. Buford, 1 Ala. Rep. 360, is relied upon to sustain this position. In that case, the outgoing sheriff, with-

out having made any levy, upon an execution which he retained in his hands, after his successor was inducted into office, received from the defendant in the *fi. fa.* the amount of the execution, and was ruled for failing to pay it over on demand. The court hold, that he is not subject to this summary remedy, inasmuch as he had no authority to receive the money. They however say, had he seized the goods of the defendant under the writ, while he was in office, then by such levy he would have acquired a special property in them, and could have sold the goods after the return day of the *fi. fa.* without a *venditioni exponas*, and though he had gone out of office. And such would have been the result in this case, had the sheriff levied upon goods, but he has indorsed a levy upon lands, which he does not sell. No special property vests in him by virtue of this levy, and he has no possession of them, as in the case of a levy upon personal property. We are not called on to decide whether his right to sell lands thus levied on, exists after he has gone out of office, but we are clear in the opinion, that the subsequent levy and sale by his successor, Poe, is not affected by the indorsement of the previous levy, and that the sale cannot be avoided for this cause.

Was there fraud in the sale, is the next inquiry. We have examined the various affidavits submitted by the parties respectively, and although the case upon this point is not entirely free from circumstances of suspicion, we think there is no proof which would warrant the court in setting aside the sale. The plaintiff in error was present at the sale, consenting to it, and had made, as he himself states, an arrangement with one Atkins to purchase it in for him, at a nominal sum, and then to convey the title to his father, thus putting it beyond the reach of his creditors. This fact being communicated by Abernathy to Caple, who was the surety of the said McCollum, he, as he swears, purchased the land for his indemnity, but after the sale, agreed to permit said plaintiff to redeem by paying the amount of the execution before the return day, and refunding the money bid at the sale, which was $510. After the purchase, Caple agreed that the deed might be made to himself and Hubbert, and by subsequent agreement, it was consented that Poe, the sheriff, should

have an interest of one third in the land, but each and all of these parties take with a knowledge of the arrangement made with McCollum, and so far as the proof discloses, were willing for the agreement to be consummated. Poe, afterwards sold out his interest to one Abernathy, and is sworn as a witness on both sides. He states, that at the time of sale, he had not the slightest interest in the purchase. That the sale was fair and *bona fide* as far as he knew, and that the arrangement by which he acquired his interest was subsequently made. Hubbert, Caple and Abernathy are all sworn, and they unequivocally deny the fraud, as well as the alledged combination to purchase in the land, but admit the subsequent arrangement by which the land was to revest in McCollum. There is some proof of declarations made by the parties, which tend to cast suspicion upon the transaction. One witness, (Powell) and the most important, states, that some considerable time after the sale, Caple, speaking of the action which he and Hubbert had brought against McCollum for the land, said to the witness, "tell him" (McCollum) "I relinquish all interest I have in the land—it was a rascally action any how." This declaration, if it could operate so as to defeat the rights of Caple, could not have this effect as to Hubbert, who was in no wise connected with it. But without protracting this opinion, it is satisfactorily shown by the proof, that the sale, *at the time* it was made, is free from fraud, and that it was then, and has been subsequently, recognized and sanctioned by the plaintiff in the motion. He has never paid the $510 bid at the sale, and credited on the execution. However reprehensible may have been the conduct of the parties since the sale, the court cannot for this cause set it aside, but must refer the parties to another tribunal. The fraud or irregularity which shall avoid a sheriff's sale upon motion, must exist at the time of the sale: the circuit court could not properly adjust the equities of the parties occurring subsequently. Upon a view of the whole case, we are satisfied the court did right in overruling the motion, and its judgment is affirmed.