## HENDERSON ET AL. vs. SUBLETT ET AL.

1. Although every inadequacy of price will not be sufficient to set aside a sale of lands made under execution, yet, when the inadequacy is so gross as, at once, to shock the understanding and conscience of an honest and just man, it will, of itself, authorize the court to set aside the sale.

2. In all such cases, the sheriff should not proceed with the sale, but should return the *fi. fa.* stating the levy and that the property was not sold for want of buyers, and wait for a *venditioni exponas.*

3. Any person who is a party to the suit, or connected with the title to the lands sold, whether his interest be legal or equitable, may be heard on a motion to set aside the sale for inadequacy of price.

ERROR to the Circuit Court of Benton.
Tried before the Hon. THOMAS A. WALKER.

MOTION to set aside the sale of lands, made under execution by Sublett, as sheriff of Benton county. The plaintiffs in the motion were Meredith P. Henderson, in right of his wife Elizabeth A., formerly Elizabeth A. Lindsay, and Flora E. Lindsay and Wm. W. Lindsay, minors, by said Henderson as their next friend; and the defendants were the sheriff, the purchaser and the plaintiffs in the several executions.

The executions under which the land was sold were all against John Lindsay, in favor of the defendants Hudson, Clarke, Moore & Crow, Woodward & Porter and Thomas Sparks. The land was proved to be worth $1800, and was bought at the sale for $5, by defendant McCampbell. The plaintiffs in the motion claimed an interest in the land, under a deed of trust made by Lindsay to one Houston, as trustee, to secure Hindman and McCollum, who were Lindsay's sureties on his bond as guardian of said Elizabeth A., Flora E. and Wm. W. Lindsay. They also showed that Houston and Hindman had removed from the State, and that McCollum was dead; that they (plaintiffs) had a bill pending in the Chancery Court of Benton, of which McCampbell, the purchaser, had notice, in which they were seeking a settlement of their guardian's accounts; that Lindsay was a defaulter, as their guardian, to the amount of $1300, and in said bill they were seeking to be substituted to the rights of Hindman and McCollum under Lindsay's deed of trust to Houston.

It was also shown that said deed of trust was executed in 1842, and was duly recorded; that the judgments of all the plaintiffs in execution were obtained in 1848 and 1849, except that of Sparks, which was rendered in 1840; that in advertising the land for sale, the sheriff had not named the execution in favor of Sparks, but, after naming the other plaintiffs in execution, added the words "and others;" nor was it stated, at the sale, that the land was sold under the execution in favor of Sparks. The sale was forbidden by A. J. Walker, on the part of Houston, who claimed title to the land under a mortgage made to him by Lindsay in 1838. Nothing was said at the sale about the deed of trust under which plaintiffs claim, either by Walker, as Houston's agent, or by any one else.

At the time of sale, McCampbell was the attorney for all the plaintiffs in execution, except Sparks; he was also the counsellor and director of the sheriff in the levy and sale of the land, and became the purchaser, as before stated. The sale was made during the temporary absence of Lindsay, and the testimony leaves it doubtful whether Henderson was present at the sale.

The court refused to set aside the sale, under this state of facts, and its judgment is now assigned for error.

WHITE & PARSONS, for plaintiffs in error:

The plaintiffs in error insist that the sale should have been set aside, on account of the gross inadequacy of price, in connection with the other facts shown by the record. The land was proved to be worth more than enough to pay the plaintiffs' demand, and the judgment in favor of Sparks, whose lien is older than the deed of trust. Plaintiffs have such an interest as will authorize them to make the motion. Mobile Cotton Press v. Moore & Magee, 9 Porter, 687; Abercrombie v. Conner, 10 Ala. 293; Hubbert v. McCollum, 6 ib. 224; Lee v. Davis, 16 ib. 516.

The sale ought to have been set aside, for another reason: the execution in favor of Sparks was not named in the advertisement, nor was it mentioned at the sale, as one of the executions under which the sale was made. It was an important fact, which ought not to have been suppressed.

J. B. MARTIN, *contra*:

1. Henderson's wife should have been joined as a plaintiff in the motion with her husband. Her right was a mere chose in action, for which, if a settlement were had in the Court of Probate, a decree would be rendered in the name of husband and wife; or if suit is brought, it must be in their joint names. Parks v. Stonum, 8 Ala., 752; Morris v. Boothe & wife, ib., 907; Mitchell v. Mitchell, ib., 414; Welch v. Welch, 14 ib., 76; Mayfield v. Clifton, 3 Stewart, 375. The distinction between this case and that of Toland v. Magee, in 8 Porter, is, that there the ward's estate consisted of negroes in the guardian's possession, while here it consists of money, which the guardian was bound to loan out; and, as we must presume that he did his duty, her right is strictly a chose in action. Bibb v. McKinley, 9 Porter, 636; 2 Serg. & R., 491; 3 Cowen, 590; 8 Mass., 99; 13 ib., 384; Hogan v. Bell & wife, 4 Stew. & P., 287.

2. These plaintiffs do not sustain such a relation, either to the process, the parties thereto, or to the land sold, as will authorize them to make this motion. Only the parties to the process, with their privies; or, at farthest, a vendor with warranty, or the legal owner of the land, can make such a motion. Fournier v. Curry, 4 Ala., 321; Foster v. Mabe, ib., 402; 9 ib., 959; ib., 937; 8 Johns., 257; 15 Ala. Rep., 212; 4 ib., 667. Before the plaintiffs would have any such right as would entitle them to relief against this sale, they must show that Lindsay has made default as guardian, that he and his securities are insolvent, and that they have been subrogated to the rights of the sureties under the deed by a proceeding in chancery, to which they and their guardian were parties. A court of chancery is the only forum in which such a proceeding could be had, or judgment pronounced; plaintiffs' remedy, therefore, is in equity, for their interest, if any they have, is a contingent equitable one.

3. The parties moving to set aside a sale, must show either fraud, or such irregularity in conducting the sale, together with injury to their rights, as will satisfy the court that the sale should not be allowed to stand. Drane & Smelser v. Henderson, 15 Ala., 425. It is not shown by the record that the plaintiffs' guardian is insolvent, that he has squandered

Henderson et al. v. Sublett et al.

their estate, or that his securities are insolvent; if this motion should prevail, it will appear that strangers to the record, without any interest either legal or equitable, have set aside a sale with which the parties themselves are entirely satisfied. If the land had brought more than enough to satisfy the execution of Sparks, the plaintiffs in the junior executions would have been entitled to it, as against these plaintiffs; if it had brought more than enough to pay off all the executions, Lindsay, the defendant in execution, would have been entitled to the surplus. How, then, can the plaintiffs be benefited by setting aside the sale? It was no irregularity to sell under several executions; nor was the omission to specify by name all the executions, such an irregularity as will avoid the sale. Advertising is for the benefit of the defendant in exetion, and he alone can complain; and here the defendant knew that Sparks' execution had been levied. 16 Vermont, 620; 2 ib., 524. Besides, it was announced that there were other executions than those specified.

4. It is contended, that the sale should be regarded with suspicion, because McCampbell, who became the purchaser, was the attorney who obtained some of the judgments. But there are two facts which take this case without the influence of the rule; he was not the attorney who obtained or superintended the collection of the Sparks' judgment, and it is only in the execution of this that complaint is made; the rule only applies where the attorney buys for himself, or is benefited by the purchase, and is intended for the protection of the plaintiff, as much as the defendant or any other party. 5. Watts, 304. The purchase here was made by the plaintiffs in the junior judgments, by their agent, and they were guilty of no fraud; by their purchase, payment and deed, they received as good a title as a stranger would. 1 Miss., 704; 10. Vermont, 346; 4 Taunt., 822.

5. Inadequacy of price is not a sufficient reason for setting aside the sale. Powell v. Governor, 13 Ala., 516; Litt. Select Cases, 256. The inadequacy is accounted for by the fact, that Houston's attorney forbid the sale, and asserted a title under a mortgage which was older than even the Sparks judgment.

The case of Lee v. Davis, in 16 Ala., bears no analogy

to the case at bar. In that case, the plaintiff in the motion was not only in possession of the land, but had a legal title to it; there was also proof of actual fraud, and the purchase was made by the attorney of the plaintiff in execution for himself.

LIGON, J.—Two questions present themselves in this case: 1st. Was the conduct of the sheriff in the levy and sale, under the executions in his hands, of such a character as to authorize the Circuit Court to set aside the sale, and vacate and annul the deed made to the purchaser? 2d. Have the plaintiffs in this motion such an interest in the lands sold, as to entitle them to come in and make the motion?

1. On the first question I would remark, that it has already been decided by this court, in the case of Lee v. Davis et al., 16 Ala. 516, and we concur fully in what is there said upon the subject. There seldom occur, in the history of judicial decisions, two cases so perfectly analogous in their facts, as the case cited and the one under consideration. Our conclusion is, that the sale should have been set aside, and the Circuit Court erred in not doing so.

An expression, however, occurs in the opinion of the court, in the case of Lee v. Davis et al., *supra*, which, without some explanation and limitation, cannot command our assent. It is this: "Inadequacy of price may not be sufficient cause for setting aside a sale of land under execution; but when coupled with other circumstances, it has induced the courts to avoid the purchase." We readily concede, that every inadequacy of price will not be sufficient to set aside a sale of lands under execution; but when the inadequacy is so glaring and gross, as at once to shock the understanding and conscience of an honest and just man, it will, of itself, authorize the court to set aside the sale. For instance, if, as in the case under consideration, a tract of land of the value of $1800 is sold for $5, the court out of which the execution issued should not hesitate to set aside the sale for this cause alone. In all such cases, the sheriff should not proceed with the sale, but return the *fi. fa.* levied, but the property not sold for want of buyers, and wait for a *venditioni exponas*.

It would be difficult to lay down a general rule on this subject, which would adapt itself to all cases. The one just sug-

gested would, perhaps, be as safe as any that could be proposed. Still, much would be left to the sound discretion of the sheriff, and should he fail to exercise it fairly, the court could review it, and thus decide the question of abuse or no abuse of process, according to the circumstances of each case as it arises. But it would be monstrous to hold, that a sale should be allowed to stand, which would invest the purchaser with the title to property, whether real or personal, at one three hundredth part of its value, or even less, as is the case here.

The practice suggested above has long since obtained in England; and if the sheriff, after having levied on property of sufficient value to satisfy the *fi. fa.* fails to observe it, and sacrifices the property by selling it at a sum greatly below its value, and insufficient to pay the plaintiff's-demand, the courts there have compelled him to satisfy, out of his own means, the sum remaining unpaid. Keightly v. Birch et al, 3 Camp. 521. See, also, the case of Lankford v. Jackson et al., decided at the present term, in which the English authorities are collated by Chief Justice Chilton.

2. On the second point presented, we think it clear that any person who is either a party to the suit, or connected with the title to the lands sold, may be heard on these motions. It is not necessary that the interest of a party be legal. If he have an equitable interest, it will suffice for this purpose, inasmuch as the questions involved in the motion do not bring up the title to the lands, but the oppressive or fraudulent use made by the sheriff of the process of the court, by which the interest of the party complaining has been injuriously affected.

In the case of Lee v. Davis et al., heretofore cited, it was held: "That where the injury complained of is in the execution of the process, and not for a defect in the process itself, it is competent for any person whose interests are thereby prejudiced, to move the court to avoid the sale."

That these plaintiffs have an interest in the lands sold, can scarcely be seriously questioned. Lindsay, the defendant in the executions, conveyed these lands to Houston, in the year 1842, in trust for the benefit of Hindman and McCollom, who were his sureties on his bond as guardian for these plaintiffs. The record shows, that his guardian's accounts are still unset-

tled, and that he is a defaulter to his wards to a large amount. They are seeking the recovery of this sum in the Chancery Court, and asking to be substituted to the right of Hindman and McCollom under the deed. They also show, that Mc-Collom is dead, and Hindman has removed from the State. Houston has also removed from the State, but was present on the day of sale, by his agent, not to assert his right under this deed, but to set up an adverse title in himself under a former deed from Lindsay. It is also shown, that the plaintiffs had already claimed an interest in the lands in the Chancery Court, the only proper forum in which they could appear to claim their right, and in which, doubtless, (if nothing more appears than is disclosed by this record,) it will be allowed them. It is clear, that they have such an equity in the lands as will enable them to come into a court of law on the motion under consideration.

These views do not militate against the decision of this court in the case of Nuchols v. Mahone, 15 Ala. 212, to which we have been referred by the counsel for the defendants. The questions in the two cases are essentially different, and the results to the parties, arising out of the judgment of the court in setting aside the sale, wholly dissimilar. In that case, the objection to the *fi. fa.* was, that it was issued after the death of the defendant, and went to the process itself, and not to the abuse of it in its execution. A latent defect in the *fi. fa.*, although sufficient to render it void *ab initio*, cannot be regarded as an abuse of the authority of the sheriff, or in any manner enter into its execution, where the officer has only followed its mandate. A purchaser under it would take no title, and those whose interests are apparently affected by it may show the process itself to be void, and thus successfully defend themselves at law, against any right which the purchaser under it might attempt to set up against them. In the present case, the objection goes alone to the execution of the process, and the objection is such as could not avail the parties injured in any action involving the title to the land. Lee v. Davis, *supra*.

Our conclusion is, that the court below erred in repudiating the motion. Its judgment is therefore reversed, and the cause remanded, that it may be proceeded in according to the prin-

ciples of this opinion, and the parties be placed in *statu quo.* before the sale by the sheriff.