# Ray's Adm'r v. Womble.

*Bill in Equity to vacate Sale under Execution, and cancel Sheriff's Deed.*

1. *Amended bill.*—Repugnancy, or inconsistency, between the original and amended bills, in the case made for relief, though in the alternative, is a good ground for not allowing the amended bill.

2. *Vacating sale under execution, and cancelling sheriff's deed.*—A sale of lands under execution may be set aside by the court from which the process issued, and that court is the proper forum in which to have it set aside, on account of irregularities in the conduct of the officer by whom it was made; but, where the sale was at a price so grossly inadequate as to negative good faith on the part of the officer and purchaser, thereby creating the presumption of fraud, and has been consummated by a deed to the purchaser, a court of equity will interfere, on the seasonable application of a party to the process, to set aside the sale, and cancel the deed.

3. *Same.*—Mere irregularities in a sale of land under execution, such as a failure to give the statutory notice, do not affect the title of the purchaser, and do not afford a sufficient reason for setting aside the sale; but, if followed by a sale manifestly injurious to the parties, the court will consider such irregu-

larities in determining whether or not the sale shall be set aside; and although inadequacy of price, not sufficient to raise the presumption of fraud, will not vitiate a judicial sale, yet gross inadequacy, as where lands worth $1,000 are sold for $10, attended with great irregularities in the conduct of the sale, is conclusive against its validity.

4. *Same.*—In the absence of all unfairness, oppression, or irregularity, the court might hesitate to set aside a sale under execution, on account of the inadequacy of the price, when the lands were worth $1,800, were incumbered with a mortgage for $400, and brought $200 at the sale; but, where the mortgagee himself becomes the purchaser, although the case is not within the strict rule as to purchases of the equity of redemption by mortgagees, the transaction will be jealously scrutinized, and it must be characterized by the utmost good faith, and supported by an adequate consideration; and if it appears that the sum bid was about the amount of the execution debt, and was twenty times the sum bid by him, a short time before, at another sale und er execution against the same defendant, for an adjoining tract of the same size, and of nearly the same value, which was entirely unincumbered, the two tracts together constituting the defendant's entire plantation,—in decreeing that the first sale be vacated, on account of the inadequacy of price, and irregularities in the conduct of the sale, the court will also set aside the sale of the equity of redemption of the mortgaged tract.

5. *Waiver of demurrer.*—A demurrer to the bill, on which no action has been taken, is waived by an answer subsequently filed, in which it is not incorporated.

6. *Tender, and repayment of purchase-money, on setting aside sale.*—When a sale of lands under execution is set aside in equity, at the instance of the defendant, the purchaser is entitled to be refunded his money, with interest; and if the bill does not offer to refund it, the court will decree a resale for his protection ; but a tender, or offer to refund, is not essential to the equity of the bill.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 24th May, 1860, by Dabney G. Ray, against D. C. Oates, and the sheriff of said county, A. A. Hughes ; and sought to set aside a sale of the complainant's lands under execution, to cancel the sheriff's deed to the purchaser, and to enjoin an action at law which the purchaser had instituted for the recovery of the lands. The lands consisted of the north-east and south-east quarters of section twenty-two (22), in township three (3), range fifteen (15) west, and together constituted the complainant's homestead and plantation. The north-east quarter was sold by the sheriff, on the 11th August, 1856, under an execution issued on a judgment rendered by the Circuit Court of said county, on the 3d April, 1856, in favor of A. C. Matthews, for $184, besides costs. At that sale, said D. C. Oates became the purchaser, at the price of ten dollars, and received the sheriff's deed. After this sale, but on the same day, the sheriff levied the same execution on the other quarter-section, and sold it, under the levy, on the 13th October, 1856 ; said D. C. Oates becoming the purchaser, at the price of $200, and receiving the sheriff's deed. This latter tract, at the time of the sale, was incumbered by a deed of trust to one

[Ray's Adm'r v. Womble.]

James P. Bell as trustee, dated the 12th March, 1853, and given to secure the payment of two promissory notes, which the complainant owed to the said D. C. Oates, together amounting to about $280, and due in March, 1854. The bill alleged that the lands were worth at least $3,000 at the time of the sales, and $4,000 when the bill was filed; that the price brought at the sale was grossly inadequate, and was caused by the sheriff's irregular and contradictory advertisements of the time and place of sale; that the sales were not legally advertised, and were made at a place not authorized by law. Copies of the execution, with the indorsements thereon, and of the advertisements, were made exhibits to the bill; and various irregularities in the conduct of the sale were specified. The complainant continued in the possession of the lands after the sale, and up to the filing of the bill; but in February, 1859, Oates recovered a judgment against him for their possession, before a justice of the peace; and the case was removed by appeal into the Circuit Court, where it was pending when the bill was filed.

The defendants filed a joint demurrer to the bill—1st, for want of equity; 2d, because the complainant had an adequate remedy at law; 3d, because he did not offer to repay to Oates the amounts paid by him under his purchases at the execution sales; and, 4th, because there was no foot-note to the bill, as required by the 10th rule of chancery practice, adopted at the June term, 1854. The record does not show that the chancellor ever acted on the demurrer. The defendants afterwards filed separate answers, admitting the material facts, but denying that the lands sold at a grossly inadequate price, or that any irregularities intervened which affected the validity of the sale; and they insisted that the inadequacy of price, if any, was caused by the fact that the lands were subject to the statutory right of redemption.

On the 4th May, 1861, the complainant filed an amended bill, in which he alleged that, during the years 1857-8, he delivered ten bales of cotton to said Oates, worth about $400, and ten other bales in 1859, worth $400 or $500, to be applied in repayment of the money which he had paid at said execution sales; and that Oates sold the cotton, and failed and refused to apply the proceeds as directed. The amended bill offered to refund the money paid by Oates at the execution sales, with ten per cent. interest, and lawful charges, and to bring the money into court; and prayed that an account might be taken, that the sales might be set aside, and for general relief. The defendants filed a joint demurrer to the original and amended bills, on the ground of multifariousness, but the record does not show any action on the

demurrer. Oates answered the amended bill, under oath, and denied all its allegations; and an answer was also filed by Hughes, denying them on information and belief.

On the 1st February, 1869, a bill of revivor and supplement was filed, alleging that Oates had become a discharged bankrupt on his own petition, and bringing in Charles Womble, his assignee in bankruptcy, as a party; and an answer to this bill was filed by the said assignee, adopting as his own the answers previously filed by said Oates. In December, 1870, the complainant having died, the cause was revived in the name of his heirs and administrator; and in May, 1875, the cause was submitted for a final decree, on the pleadings and proof. The chancellor held, that the complainant was not entitled to relief; that he had an adequate remedy at law, to set aside the sales under execution, by motion to the court from which the process issued; and that he was not entitled to redeem, under the amended bill, because it was not filed within two years after the sale, and no excuse was shown for the delay. He therefore dismissed the bill, and his decree is now assigned as error.

J. B. MOORE, for the appellant.—1. The jurisdiction of a court of equity to set aside a sale of lands under execution, issuing from a court of law, is well established.—*Mobile Cotton Press v. Moore*, 9 Porter, 679; *Howell v. Baker*, 4 Johns. Ch. 118; 7 Wendell, 88; 51 Illinois, 112; 21 N. J. 328; *Lee v. Davis*, 16 Ala. 522; 21 Ala. 630; 7 Gill & J. 494; 40 N. H. 173; 7 Dana, 388; 8 Ala. 866; Rorer on Judicial Sales, §§ 855-6. If fraud was necessary to sustain the jurisdiction of the court, the record makes out a clear case of fraud in law, which includes "all acts, omissions, or concealments, which involve a breach of legal or equitable duty."—*Kennedy v. Kennedy*, 2 Ala. 572; 1 Story's Equity, § 197.

2. The sale cannot be sustained. The gross irregularities attending it, and the great inadequacy of price, are conclusive against its validity.—*Bliss v. Watkins*, 16 Ala. 229; *Lankford v. Jackson*, 21 Ala. 630; *Mastcraft v. Van Antwerp*, 3 Cowen, 334; *Alley v. Carroll*, 3 Sneed, 110.

3. When a sale is set aside, there is no necessity for a tender of the purchase-money.—16 Indiana, 114, 433. If a tender was necessary, the offer in the amended bill is sufficient.—17 Ala. 502; 27 Ala. 194.

4. The amended bill makes out a clear case for relief. As to the right to file a bill in a double aspect, asking relief in the alternative, see *Crawford v. Kirksey*, 51 Ala. 600. The prayer for general relief was sufficient.—*May v. Lewis*, 26 Ala. 646.

WM. & L. B. COOPER, *contra.*—1. The original and the amended bill together constitute but one suit, and the grounds of relief must be consistent throughout the whole.—*Winter v. Quarles,* 43 Ala. 695. The amended bill, in this case, was a clear departure from the original bill, and rendered it multifarious.—*Bean v. Bean,* 37 Ala. 17; *Felder v. Davis,* 17 Ala. 422; *Halstead v. Shepard,* 23 Ala. 568; 5 Paige, 65, 78; *Kinsey v. Howard,* 47 Ala. 236; *Gardner v. Pickett,* 46 Ala. 194.

2. The irregularities in the advertisement of the sheriff's sale did not render it invalid, nor affect the title of the purchaser.—*Ware v. Bradford,* 2 Ala. 676; *Williams v. Powell,* 5 Ala. 59; *Mobile Cotton Press v. Moore,* 9 Porter, 679; 6 Humph. 298; 3 Gilm. 477.

3. A sale under execution will not be set aside for mere inadequacy of price, when the purchaser is a stranger, unless there is fraud.—*Little v. Zants,* 2 Ala. 256; *Chambers v. Stone,* 9 Ala. 260; *Wernick v. Ross,* 2 Carter, Indiana, 99; *Wheaton v. Sexton,* 4 Wheaton, 503.

4. If sufficient grounds existed for setting aside the sale, the complainant had an adequate remedy at law, by motion to the court from which the process issued.—*Mobile Cotton Press v. Moore,* 9 Porter, 679; *Ware v. Bradford,* 2 Ala. 683; *Henderson v. Sublett,* 21 Ala. 626; *Lankford v. Jackson,* 21 Ala. 650; 9 Rich. Eq. 521; *Marsh v. Ludbun,* 3 Sandf. Ch. R.

5. The remedy at law being adequate, equity will not interfere.—*Bibb v. McKinley,* 9 Porter, 636; 5 Porter, 161; *McCullough v. Walker,* 20 Ala. 389; *Crothers v. Lee,* 29 Ala. 337; *Comby v. McMichael,* 19 Ala. 747; *Kimball v. Moody,* 27 Ala. 130; *Russell v. Little,* 28 Ala. 160; *Machem v. Machem,* 28 Ala. 375; *Garrett v. Lynch,* 44 Ala. 685. Fraud, no matter how gross, is not sufficient to justify the interference of equity, when the party can have full remedy and relief at law.—*Knotts v. Tarver,* 8 Ala. 744; *Sadler v. Robinson,* 2 Stew. 522; *Vanlier v. Kirkman,* 7 Ala. 217; *Dickson & Lewis v. Goldthwaite,* 34 Ala. 638.

BRICKELL, C. J.—The amended bill presented a different case from that stated in the original bill, entitling the complainant to different relief; and it was, for that cause, if not for others, subject to the demurrer interposed. In the case of *Lockett v. Hurt,* at the present term, we passed on an original bill, seeking relief on alternative statements, similar to the statements found in the original and amended bills filed in this cause, without an inquiry into the inconsistency and repugnancy of the case presented, because the statute confines attention to the causes of demurrer specially assigned, and the assignments of demurrer did not embrace

such cause. An amendment is a mere continuation of the original, and with it constitutes but one bill. Its office, when it is not, under our statute, resorted to for the purpose of introducing supplemental matter, is the curing of defects or omissions in the original bill, and not the introduction of new matter, varying the relief prayed, or the right in which it is claimed.—*McKinley v. Irvine*, 13 Ala. 682; *Crabb v. Thomas*, 25 Ala. 212; *Williams v. Barnes*, 28 Ala. 613. Further consideration of the amended bill is unnecessary. The complainant's case must depend on the original bill entirely.

2. The Circuit Court unquestionably had power to vacate the sales of the lands. If irregularity in the conduct of the officer making them was the only ground· for setting them aside, and no cause for equitable interference existed, the jurisdiction of that court would be exclusive. Not only irregularity, but a sale for a price so grossly inadequate as to be inconsistent with good faith on the part of the officer and the purchaser, creating the presumption of fraud, is averred. The sale was followed by the execution of deeds by the sheriff, which are a cloud on the title, the cancellation of which is within the exclusive jurisdiction of a court of equity. The power of the court of law would be exhausted, when the sale was vacated. The deed would remain in the possession of the purchaser, and could, at any time, be used as evidence by him in an action for the recovery of the lands, compelling the complainant, or those claiming under him, to introduce the evidence of the vacation of the sale, to repel its operation and effect as evidence of title. The remedy at law is not, therefore, adequate, and a court of equity had jurisdiction of the case made by the original bill.—*Lockett v. Hurt*, at the present term.

3. Mere irregularities in sales by the sheriff, such as a failure to give the statutory notice of the time and place of sale, will not authorize the vacating them, nor affect the title of the purchaser. If, however, such irregularities are followed by a sale, manifestly injurious to the parties to the process, or either of them, they are to be considered, in determining whether the sale shall stand or be vacated. There were, certainly, inexcusable irregularities in the advertisement of the first sale, of which complaint is made; such irregularities as the public would regard as rendering it uncertain whether there would be a sale, and would excite suspicion of its fairness. These are followed by the sale of a quarter-section of land, which the evidence shows to have been of the value of one thousand dollars at least, for the sum of ten dollars, probably the only bid made. Inadequacy of price, not sufficient to create the presumption of fraud,

will not vitiate a judicial sale, as it would not a private sale between individuals, of which mutual agreement is the controlling element. When, however, the sale is attended by irregularities in the line of conduct to be observed by the officer making it, and is, of itself, a breach of official duty, the inadequacy of consideration is conclusive against its validity. While it is the policy of the law to protect purchases at judicial sales, and to inspire confidence in their validity, it is equally its policy to prevent such sales from being perverted into instrumentalities of oppression, and confiscation of men's estates. It was the clear duty of the sheriff, in which he would have been fully protected, to have postponed the sale; returning the execution, stating the facts, and that the lands had not been sold for the want of bidders. *Powell v. Governor*, 9 Ala. 36; *Lankford v. Jackson*, 21 Ala. 650; *Henderson v. Sublett*, 21 Ala. 626. The sale, under the facts appearing in the record, was mere spoliation, and not the execution of the process of the court. There can be no hesitancy in pronouncing it invalid, and decreeing its vacation, and a cancellation of the deed of the sheriff. The purchaser was bound to know, if he knew the value of the land, that it was a breach of the duty of the sheriff, and could not be sanctioned by the courts. It is presumable he had knowledge of the value of the land, or, if he did not, he was engaging in a speculation in which gain might be very large, while the loss, if loss followed, would be inconsiderable. In neither attitude, is he entitled to the favorable consideration of the court.

4. A sale of other property was, by this sacrifice of the land levied on, necessary to the satisfaction of the execution; and it was immediately, on the day of sale, levied on the defendant's equity of redemption in an adjoining quarter-section of land. The two quarter-sections composed the farm, or plantation, on which the defendant resided. The deed of trust incumbering this land was a security for a debt due to Oates, the purchaser, not exceeding in amount four hundred dollars. The value of the land was not less than eighteen hundred dollars. It is not averred in the answer that the debt secured by the deed of trust was not paid by the defendant in execution, before any steps were taken by Oates to disturb him in the possession, more than two years after the sale, and when the period for statutory redemption had expired. Oates, the *cestui que trust* in the deed of trust, standing to the defendant in execution in the relation of mortgagee, becomes the purchaser of the equity of redemption, for the sum of two hundred dollars, very nearly, if not the exact sum necessary to satisfy the execution, and to

[Ray's Adm'r v. Womble.]

silence any clamor by the plaintiff in that process.    Thus he becomes the purchaser, for a merely nominal sum, of the quarter-section which was not incumbered, and for the quarter-section which was incumbered, bids twenty times that sum, though there is no such disparity in their relative value, nor is there shown to have been at the last sale any rivalry in the bidding, which produced the result.

It is not possible to lay down any definite rule, by which to determine the cases in which courts will intervene to vacate judicial sales, because of the disparity between the price and the value of the thing sold.    When, as in the first sale, which we have declared should be vacated, the price is merely nominal, such as the officer can not in good faith accept, there is no difficulty.    Other cases must depend, in a great degree, on their own peculiar facts and circumstances.    The value of the equity of redemption was, probably, fourteen hundred dollars.    In the absence of all unfairness, or oppression, or irregularity, we would hesitate to affirm that the inadequacy of the sum bid would compel a vacation of the sale.    The facts and circumstances of this case induce the presumption of a formed design, on the part of the purchaser, to acquire the lands at much less than their real value, and to accomplish that end by taking advantage of the necessitous condition of the defendant in execution. This presumption is not weakened, or repelled, by any fact found in the pleadings or evidence.    The first sale, at which he was most probably the only bidder, and the purchaser for a mere nominal sum, which was a palpable violation of the duty of the sheriff, is followed by an immediate levy on the lands which were incumbered by the deed of trust, in which he was the sole beneficiary.    At the second sale, he purchases the incumbered lands, bidding twenty times the sum bid for the unincumbered lands ; certainly not because of the disparity in value of the two tracts, nor, so far as appears, because of any rivalry in the bidding.    The correspondence between the sum bid and the sum necessary to satisfy the execution, leads to the supposition that it was to quiet the plaintiff in execution, and prevent any inquiry into, and controversy over the sales, from that quarter.    The necessities and embarrassed condition of the debtor, over whom the deed of trust was suspended, would keep him quiet, while he indulged the hope of redeeming the lands.    Without rent, or a claim of rent, for more than two years, the debtor remains in undisturbed possession of the lands, though the law-day of the deed of trust had expired ; and if the sale under execution was valid, Oates's title was perfect, entitling him to possession and the rents and profits.    The lapse of time barring

the statutory right of redemption, and the debts secured by the deed of trust having been paid, title to the lands is asserted, and legal proceedings for the recovery of possession commenced. No explanation of this delay is attempted.

If a mortgagee had made a direct purchase, by private contract, of the equity of redemption from the mortgagor, who was harassed by execution, and seeking relief from present pressure, at a price so inadequate as that paid by Oates at the sheriff's sale, a court of equity would not hesitate to set aside the transaction. All such transactions are watched with jealousy, and if not marked by the utmost good faith, and supported by an adequate consideration, are relieved against, if timely complaint is made.—*Holridge v. Gillespie*, 2 Johns. Ch. 30; *Henry v. Davis*, 7 Johns. Ch. 40. The rule may not be applicable, in all its strictness, to purchases by the mortgagee, at sheriff's sale, of the equity of redemption under an execution in favor of a stranger. Such purchases must, however, be narrowly watched, or mortgages will become oppressive, and through their means, the advantages they give the mortgagee, and the power they confer, lands will be sacrificed to avarice and selfishness. When such a purchase is attended by circumstances like those attending this purchase, indicating a formed design to profit by the embarrassments of the mortgagor, and to acquire his lands for a sum wholly inadequate, when compared with the value, the sale should not be permitted to stand.

5. If it should be conceded the original bill is demurrable, because it does not contain an offer to pay the purchase-money, paid by the purchaser at the sheriff's sale, the demurrer, no action having been taken on it, was waived by the answer subsequently filed, in which it was not incorporated.—Story's Eq. Pl. § 688.

6. The purchaser is certainly entitled to a return of the purchase-money; and if it was applied to the satisfaction of the execution, the decree vacating the sale must secure it to him, with interest. We must not be understood as intimating that it was essential to the equity of the bill that the complainant should have offered to refund the purchase-money. The sale was compulsory, and the complainant had not received money of the purchaser, on a contract made between them. This distinguished the case, from that class of cases in which a complainant, seeking a rescission of a contract, because of fraud or mistake, must offer to place the party with whom he dealt *in statu quo*, before a court of equity will be active for his relief. A resale of the lands was the legal right of the complainant, though he was unable to repay the purchaser the money he had expended. The court,

[Pettus v. McKinney.]

in decreeing the vacation of the first sale, and ordering a resale, if necessary, because of the inability of the complainant to refund the purchase-money, would, of course, fully protect the purchaser. But it could not be tolerated, that a judicial sale, tainted with fraud, and a breach of official duty, oppressive, and grossly unjust to an unfortunate debtor—a mere sacrifice of valuable property—should be permitted to stand, because of the debtor's inability to refund the purchase-money, insignificant in amount as it may be.

The chancellor dismissed the original bill, because the complainant's remedy was at law. While we concur in the opinion that there was a remedy at law, by motion to the court from which the execution issued, for a vacation of the sale, there is, also, a more adequate remedy in equity, in which full relief, foreclosing all future litigation, or opportunity for it, can be afforded.

The decree of the chancellor is reversed, and the cause remanded, for further proceedings not inconsistent with this opinion.