[Anniston Pipe Works v. Williams, and Anniston Pipe Works v.
Houser, *et al.*]

# Anniston Pipe Works v. Williams, and Anniston Pipe Works v. Houser, *et al.*

## *Motion to Set Aside Sale under Execution.*

1. *Execution sale; place of sale, when county has two court-houses* When there are two court-houses in a county, one at the county seat where the circuit, chancery, probate and other courts are held, and the other at a different city, which is included within the territory embraced in an act of the legislature establishing a city court, which has co-equal and co-ordinate powers and authority with the circuit and chancery courts within certain designated precincts of the particular county, said court being a part of the machinery of justice in said county, the provisions of the statute (Code, § 2907), which requires that sales of land under execution shall be made at the court-house of the county, applies to both of said court-houses within such county, and sales of land under execution may be made at either court-house.

2. *Same; sale of several distinct parcels of land, must be made separately.*—When several distinct parcels of land are to be sold under execution, the officer making the sale should sell them, separately, unless it be shown that by reason of special circumstances a "lumping sale", or sale *en masse*, was necessary or more advantageous to all parties; and if in disregard of his duty, the officer sells all the parcels of land together, such sale will be set aside on proper application, seasonably made.

3. *Motion to set aside sale under execution; when seasonably made.*—There is no inflexible rule as to the time within which a motion to set aside and vacate a sale of land under execution must be made, the seasonableness of such a motion being determinable by the facts and circumstances of each particular case; and where, after a sale under execution, the property remained unchanged and it is shown that nothing affecting the property itself or the relation of the purchasers to it has resulted from the delay, a motion to set aside such sale made within two years from its date is seasonably made.

4. *Same; when improperly granted by court of law.*—While, as a general rule, courts of law have complete control over their own processes and are competent to prevent injustice in the execution thereof, circumstances sometimes arise in which they are incompetent and powerless to protect the rights of others which have intervened; and where on a motion in a court of law to set aside a sale under an exe-

cution issued therefrom, it is shown that the sheriff has executed his
deed and the purchaser has gone into possession and paid off taxes
and other liens, which should rightfully be refunded to him, such
motion can not be granted, since the court of law is not competent to
give the relief justice demands in setting aside the sale, by annulling
the deed and refunding to the purchaser his rightful expenditures,
and the movant can only obtain relief in a court of equity. (McCLELLAN,
J., dissenting.)

APPEAL from the City Court of Anniston.

Tried before the Hon. T. R. MATTHEWS, Special Judge.

The questions in both of these causes being the same,
they are submitted together on the present appeal. The
proceedings were instituted by motions in the case of An-
niston Pipe Works v. W. H. Williams, on the common
law side of the docket of the Anniston city court. In
the first case the motion is made by W. H. Williams, the
defendant in execution; and in the other case by T. L.
and C. J. Houser, judgment creditors of said W. H.
Williams. The Anniston Pipe Works had recovered a
judgment against W. H. Williams, and an execution is-
sued on said judgment had been levied on certain real
estate as the property of said Williams; and the property
sold thereunder, and purchased by the receivers of the
Anniston Pipe Works. The motions and pleadings in
each case are substantially the same. The motions were
made to have set aside the sale of the lands under the
execution in said cause on August 15th, 1892; the lands,
as levied upon and sold, being described in said motions.
The motion of Williams was made on June 11th, 1894;
and the Houser motion was made on May 30th, 1894.
The grounds of each motion were as follows: "1. That
the said lands and lots consist of several distinct and
separate tracts or parcels of lands, and were sold by the
sheriff and bid off by said receivers *en masse*, and for a
sum in gross.

"2. That the said lands so sold by said sheriff *en masse*
were reasonably worth, at the time of said sale, the sum
of one hundred thousand dollars, or more, and that by
reason of being sold together, *en masse*, they brought
only the sum of $7,026.25, and were bid off and pur-
chased by said receiver at said last named sum.

"3. Because said sale was made at a place not autho-
rized by law.

"4. That the said lots and lands were insufficiently described in the advertisement for said sale and levy."

The Anniston Pipe Works and W. W. Stringfellow and W. G. Ledbetter, the receivers of said Pipe Works and the purchasers of said lands sold under the execution, filed an answer to each of said motions, and alleged therein that said sale of the lands levied upon under the execution was fairly conducted ; that said property sold for an amount not greatly less than its real value, and as much as it would have brought if offered for sale or sold in separate parcels or lots ; that after the said sale the said Stringfellow and Ledbetter, as receivers, received a deed of conveyance to said property from the sheriff who made the sale, and entered into the possession and control of said property, and have since continued in possession thereof, and have returned the same for taxes, and have paid taxes and other liens prior to all other liens on said property ; and had advertised said property for sale and distribution among the creditors of the Anniston Pipe Works before the motions in this case were entered and filed ; and that said motions to set aside said sale came too late, and should not be granted by the court. The fifth paragraph of said answers was as follows : "And for further answer to said motion, defendants say that said property was not sold at said sale for an amount greatly less than its real value, and they are willing and hereby offer to have said sale vacated upon being reimbursed the amount of their said bid, with the taxes and other liens paid by them on said property ; and hereby offer to convey said property and all their interest acquired at said sale therein to the movants in this cause, or to any other person, upon being paid the amount of their said bid, and the amount of said taxes and liens paid by them thereon." The movants demurred to the answers on the grounds : (1) , that the matters and thing set up therein are insufficient, and are no answer to said motion ; and (2) , because the facts averred in the answers are statements of matters immaterial to the issue involved. The court overruled the demurrer, except as to the fifth paragraph of the answers, and sustained it as to said fifth paragraph ; and to this ruling of the court the respondents duly excepted.

The evidence introduced on the hearing of these mo-

tions was in conflict. The witnesses in behalf of the
movants testifying that the property sold under the ex-
ecution was purchased for a price greatly less than its
real value; and that if the lots or parcels of the lands
had been sold separately, the property would have
brought a much better price. The testimony for the re-
spondents to said motions tended to show that the prop-
erty sold under the execution was encumbered with other
liens and claims ; and that as a result of such incum-
brances, the price paid for it was not less than its real
value—the purchasers buying practically only the right
of redemption ; and that by reason of such incumbrances
and other causes, the property sold *en masse* brought as
good price as if it had been sold in separate lots or par-
cels. It was also shown by the evidence that the sale
was advertised to take place, and did take place, in front
of the city court room in the city of Anniston.

Upon the hearing of all the evidence on the respective
motions, the court granted each of them, and ordered
that the sale under the execution be set aside, vacated,
and held for naught. The Anniston Pipe Works and
W. W. Stringfellow and W. G. Ledbetter, as receivers
of said Pipe Works, prosecute the appeal in each case,
and assign as error the judgment of the court sustaining
the demurrer to the fifth paragraph of the respondents'
answers, and the final judgment of the court sustaining
the motions, and setting aside the sale under the ex-
ecution.

KNOX, BOWIE & PELHAM, for appellants.—1. The act
creating the city court, prescribing, as it does, that the
court shall be held at a different place from the county
seat, presents the case of a county with two court-houses ;
a situation it would seem not within the contemplation
of the legislature in providing that judicial sales shall
be made at the county court-house.—Code, § 2907.
Where there are two court-houses in the county, as in
this case, both owned and controlled by the county, the
one just as much the court-house of the county as the other,
the sheriff would be allowed a discretion in the place of sale,
and the sale would not be illegal if made, as in this case, at
the court-house in Anniston.—*Nesbitt v. Dallam*, 28 Amer.
Dec. 243 ; Freeman on Executions, 249.

2. Ordinarily it may be the duty of the sheriff, in a case like this, to offer the lands in parcels, where this can be done conveniently and to the advantage of the parties. But the court will observe that this is not an arbitrary or unbending rule, even so far as the question of the sheriff's duty is concerned. Numerous cases might be instanced where it would be the duty of the sheriff, if he thought and believed it to the advantage of the parties in interest, to sell in bulk and not in parcels. As is stated in a number of cases to which the court has been referred, something must, of necessity, be left to the sound discretion of the sheriff in meeting and discharging the responsible duties of his office.—*Parkhurst v. Cory*, 11 N. J. Eq. 233 ; *Holmes v. Steele*, 28 N. J. Eq. 173 ; *Vanduyne v. Vanduyne*, 16 N. J. Eq. 93 ; *Merwin v. Smith*, 2 N. J. Eq. 182.

3. It is well settled in this State, whatever may be the rule in other States, that a judicial sale will not be vacated or set aside unless there has been an abuse of the process resulting in direct, positive, manifest injury to the party complaining.—*Holly v. Bass*, 68 Ala. 206 ; *McLaughlin v. Bradford*, 82 Ala. 431 ; *Ray v. Womble*, 56 Ala. 32 ; *Grigg v. Banks*, 59 Ala. 311 ; *Cramer v. Watson*, 73 Ala. 127 ; Code of 1886, § 1881. Public policy ; the peace and repose of titles ; the stability of judicial sales, all require that the court should refuse to interfere, "unless fraud or illegality, or irregularities seriously affecting their character and fairness intervene."—*Cowan v. Sapp*, 74 Ala. 44.

4. All the authorities hold that inadequacy of price, though gross, is not in itself sufficient cause for setting aside the sale. If the sale was fairly conducted, it will be upheld, notwithstanding gross inadequacy of price.— *Holly v. Bass*, 68 Ala. 206 ; *Littell v. Zuntz*, 2 Ala. 256 ; *Blackburn v. Selma R. Co.*, 3 Fed. Rep. 689 ; *Pewabic Mining Co. v. Mason*, 145 U. S. 349 ; 12 Amer. & Eng. Encyc. of Law, 235 ; *Pate v. Hinson*, 104 Ala. 599; *Cummins v. Little*, 16 N. J. Eq. 48.

5. The court, in granting or witholding the motion, proceeds entirely upon principles of equity. If the movants have been guilty of *laches* ; if they have delayed action until the situation of the property or the purchasers have changed so that they can not be made whole,

or placed *in statu quo*, the court, upon every principle of
equity, will refuse to interfere.—*Vanduyne v. Vanduyne*,
16 N. J. Eq. 93. It is respectfully submitted, that the
cases of *Bolling v. Gantt*, 93 Ala. 89, and *Ezzell v. Watson*,
83 Ala. 120, do not establish the proposition that the
motion may be made at any time within two years.

6. There is as much reason why special circumstan-
ces should authorize the court to restrict the period as to
enlarge it. Every application, as has been frequently
declared, is to be determined upon its own particular
facts, and the court grants or witholds relief upon prin-
ciples of equity, in order to see that substantial justice
is done.—*Pate v. Hinson*, 104 Ala. 599; *Hubbert v. McCol-
lum*, 6 Ala. 221; *Abercrombie v. Conner*, 10 Ala. 293.

CALDWELL, JOHNSON & ACKER, for Williams; and
JOSEPH CARTHEL, for Housers.—The motion is made in
time. Proceedings to set aside sales and motions to va-
cate sales are of an equitable nature. The rules which
apply are analogous to the known rules of a court of
equity in granting relief to a mortgagor, or those claim-
ing under him, seeking to avoid a purchase by the
mortgagee at his own sale, or a *cestui que trust* claiming
to be relieved from a purchase by a trustee.—*Cowan v.
Sapp*, 74 Ala. 44; *Ponder v. Cheeves*, 90 Ala. 117. The
time in which this can ordinarily be done is two years.
Though there is no fixed limit as an absolute bar, as cir-
cumstances of each case will modify and sometimes ex-
tend it.—*Cowan v. Sapp, supra*. Two years is a reason-
able time in which to make the motion.—*Alexander v.
Hill*, 88 Ala. 487; *Ezzell v. Watson*, 83 Ala. 120; *Ponder v.
Cheeves*, 90 Ala. 117; *Bolling v. Gantt*, 93 Ala. 89.

2. Where several distinct parcels of real estate are to
be sold, what is called a lumping sale can rarely be
justified. Such a sale, when objected to in due time, will
not be upheld, unless special circumstances can be shown,
from which it must be inferred that such sale was either
necessary or advantageous. When two or more distinct
lots are to be sold, the officer should always endeavor
to sell them separately unless it is clear that they will
bring more when offered together. If, in disregard of
his duty, he should sell them in a lump, as one parcel,
the sale will be set aside on seasonable application.

Freeman on Executions, § 296; 12 Amer. & Eng. Encyc. of Law, 214; Rorer on Judicial Sales, §§ 730, 731; *Wheeler v. Kennedy*, 1 Ala. 292; *Mobile Cotton Press v. Moore*, 9 Port. 679; *Ryerson v. Nicholson*, 2 Yeates 516; *Groff v. Jones*, 6 Wend. 522. Such a sale is *prima facie* void, and he who seeks to sustain it, must show its justice and expediency.—*Nesbitt v. Dallam*, 28 Amer. Dec. 236; *Jones v. Davis*, 2 Ala. 730; *Ballard v. Scruggs*, 25 Amer. St. Rep. 703; Freeman on Executions, p. 466, § 281; Herman on Execution, § 223. A sale *en masse* is presumed to be injurious because defendant has the right to have each parcel separately sold so that each part may be separately redeemed.—Freeman on Executions, § 320; 12 Amer. & Eng. Encyc. of Law, 239; *Ballard v. Scruggs*, 25 Amer. St. Rep. 703; 6 General Digest, p. 1209, § 96.

3. The sale was made at an improper place. The Code, § 2907, provides that lands, when levied on under execution from any court of record, must be sold on any Monday in the month at the court-house of the county. The proof shows that the sale was made in front of the city court door in Anniston. Jacksonville has the county court-house. This sale ought to have been made at the place provided by law. In the act creating the city court, the section of the Code referred to was not repealed, but in the statute passed February 9, 1893, (Acts 1892–93, p. 341, § 15), it is now provided that lands may be sold at the court-house of the city court of Anniston. This was passed after the sale made in this case. While the construction of the legislature is not binding on the court, yet it is persuasive as to the construction put upon it by the legislature. The weight of authority is that the land must be sold at the time and place provided in the statute, and other sales would be void.—Code, § 2907; Freeman on Executions, § 289. Herman on Executions, says, (§ 200, p. 311), the provisions of State statutes fixing the place of sale are imperative and mandatory, and a sale at any other place is void.—Enlich on Statutes, § 430, p. 617; 22 Amer. & Eng. Encyc. 595 and notes 1, 2; 51 Amer. Dec. 769.

4. If the sale was void for any reason, it would be the duty of the court to prevent the abuse of its process by setting aside the sale. Or, if an irregular sale to the

prejudice of the parties in interest is made, the court has
power to vacate it.—*Ridgway v. Glover*, 60 Ala. 181; 3
Brick. Dig. 584, § 120; *Holly v. Bass*, 68 Ala. 206.

HARALSON, J.—1. Section 2907 of the Code provides,
as to the sale of real estate under execution, that "lands
when levied upon  under execution  from any court of
record, must be sold on any Monday in the month, at the
court-house of the county." It is not denied, that if
there were but one court-house in Calhoun county, the
sale of the land in question, to be legal, must have been
made at that place.    There is high authority for holding,
that where the statute prescribes the place where real
estate is to be sold under execution, it is imperative and
mandatory, and a sale at any other place would be void.
Herman on Executions, § 200; Freeman on Executions,
§ 289; Rorer on Judicial Sales, § 779; *Howard v. North*,
5 Tex. 290; *Grace v. Garnett*, 38 Tex. 156; *Koch v. Bridges*,
45 Miss. 247.

Jacksonville is the county seat  of  Calhoun county,
and a court house of the county is located there.    The
act establishing the city court of Anniston, clothed the
judge and court thereof, within the precincts of the coun-
ty designated, including the city of Anniston, with the
same powers, authority and jurisdiction as circuit judges
and chancellors, and circuit and  chancery  courts have
and exercise.—Acts 1888–89, p.  564.    It is provided
therein, "that said court shall be held and  the  office of
said clerk (of the court) and the  records  thereof, shall
be kept at such place in the city of Anniston  as  may be
provided by the court of county  commissioners of  Cal-
houn county;" the grand and petit jurors  for said court
are drawn by the jury commissioners  of  said county;
the sheriff of the county is made the  executive officer of
that court, in all respects  as  he is  of the circuit and
chancery courts; the fines  and  forfeitures accruing in
said court are paid into the county treasury, and the sal-
ary of the judge is paid by the county.    It thus appears,
that said court is a part of the machinery for the admin-
istration of justice in said county,  of  co-equal and co-or-
dinate powers and authority with the  circuit and chan-
cery courts therein, and that its records, proceedings and
court-house, appertain to judicial proceedings in and be-

longing to the county, in the same sense and degree, as
do those of the circuit and chancery courts. It may be
said, therefore, that Calhoun county has two court-
houses, one in Jacksonville and one in Anniston, and
that sales of real estate sold at the court house in Annis-
ton, are sales at the court-house of the county, within
the meaning of said section 2907 of the Code.

2. The sale in this case was made in bulk, of a large
quantity of real estate in the city of Anniston. It in-
cluded the interest of the defendant, Williams, in execu-
tion, in about 27 acres lying between certain designated
boundaries, laid off, as appears from the map, into about
130 lots, with three blocks remaining not subdivided.
Another part of the levy and sale, included all
claim of the said Williams in sections 5, 6, 7
and 8, in township 16, R. 8 in Calhoun county,
which we infer from the map submitted, and from the ar-
guments in the cause, embrace four square miles cover-
ing a large part of the residence and business portions
of the city of Anniston, with many hundred blocks sub-
divided into lots ; and besides, there is a very large num-
ber of lots and blocks, too numerous for one to venture,
without counting very particularly, to number with ac-
curacy ; and with such inaccuracy of description, the
whole property, or defendant's interest in it, was offered
and bid off by the receiver of the appellant, The Annis-
ton Pipe Works, in mass, for $7,026.25, to satisfy several
executions against the defendant, Williams. It was
agreed, and the sheriff's deed recites the fact, that that
amount of money was paid to the sheriff in consideration
of which he executed a deed to the property to the pur-
chasers,—August 16, 1892. What was the aggregate of
the several executions under which the property was sold,
does not appear, but it is shown, that two of the four
executions,—the ones in favor of the First National Bank
of Anniston, and the Birmingham Trust & Savings
Company, each of which were prior liens,—were paid
in full, together with the sheriff's costs and commissions
for making the sale, and the sheriff was directed to enter
upon the execution in favor of the Anniston Pipe Works,
the appellant, against the defendant, W. H. Williams, a
credit for the balance of the amount of said purchase
money.

[Anniston Pipe Works v. Williams and Anniston Pipe Works v. Houser, *et al.*]

In respect of sales in mass, Mr. Freeman says: "Where several distinct parcels of real estate, or several articles of personal property are to be sold, what is called a 'lumping sale' can rarely be justified. Such a sale, when objected to in due time, will not be upheld, unless special circumstances can be shown, from which it must be inferred that such sale was either necessary or advantageous. It is sometimes said, that such a sale will not be vacated until it is shown to have injured some one. But when two or more distinct lots are to be sold, the officer should always endeavor to sell them separately, unless it is clear that they will bring more, if offered together. If in disregard of his duty, he should sell them in a lump, as one parcel, the sale will be set aside, on a seasonable application."—Freeman on Executions, § 296.

Holding to the same view, Mechem gives as its reason, "that no greater amount shall be sold than is necessary to satisfy the execution; and it increases competition: many persons may desire to purchase a lot or parcel who would not or could not purchase several or the whole quantity levied on, and where by statute a debtor is allowed a certain time for redemption, by selling in parcels, the price of each lot is definitely fixed, thereby enabling him to redeem any portion of the property sold."—Mechem on Executions, § 222; Rorer on Judicial Sales, § 730; 12 A. & E. Encyc. of Law, 214. 215, and authorities cited in each; *Wheeler v. Kennedy*, 1 Ala. 292; *Jones v. Davis*, 2 Ala. 730; *Mobile Cotton Press v. Moore*, 9 Port. 679–92; *Klopp v. Witmoyer*, 43 Penn. St. 219; s. c. 82 Am. Dec. 563; *Nesbitt v. Dallam*, 7 Gill. & John., 494; s. c. 28 Am. Dec. 236.

Two witnesses for the movants swore, the one, that the property sold was worth at the time, $168,000, and the other, that it was worth $158,275. The five witnesses for the appellant swore, that the price at which it was bid off, when all the circumstances were considered, was fair. But, without reference to the adequacy of the amount bid, there can be no doubt that the defendant has presented a case, if his application does not come too late, when, under proper proceedings, the sale should be set aside.

3. As to the time within which a motion to set aside

a sale of land under execution must be made, we have repeatedly held, that no inflexible rule has been or can be announced. There should always be promptness in making such a motion, the reasonableness of which is to be determined by the particular circumstances of each case. The question of *laches*, when involved, must be determined on equitable principles.—*Bolling v. Gantt*, 93 Ala. 90; *Ponder v. Cheeves*, 90 Ala. 117; *Cowan v. Sapp*, 74 Ala. 44. In the case in hand, the application was made inside of two years after the sale. The property remained unchanged, meantime, so far as appears; and we fail to discover anything as affecting the property itself, and the relation of the purchasers to it, which would make it injurious or prejudicial to them, as for any delay that has occurred, for the motion to set aside the sale to be granted, under proper conditions, and much, that may come to defendant, if the sale is not set aside.

But, how can a court of law deal with such a case as we have before us? The general rule is, that a court of law has complete control over its processes, to prevent abuse and injustice; but circumstances may arise in the execution of the orders or processes of a law court, which on account of its fixed rules, render it incompetent to administer full relief to a party seeking its aid, or to protect from injustice and injury the rights of others which have intervened. On the motion of the movants and the proofs introduced, it is evident that the sale should be set aside; but, from the answer to the motion and the evidence introduced, it appears that the sheriff has executed a deed to the purchasers of the lots in question, which a court of law has no power to annul, and that the purchasers have rightfully paid out considerable sums of money in paying taxes and removing liens on the property, which should be refunded or secured to them. It would be manifestly inequitable and contrary to well established rules on the subject, to set aside the sale, without refunding to them the money they have paid out, and placing them *in statu quo*. These facts give rise to questions of law which can be properly determined only in a court of equity, and which must be adjudicated before the movants are entitled to have the sale set aside. *Cowan v. Sapp*, 81 Ala. 525; *Ray v. Womble*, 56 Ala. 32,

*supra; Littell v. Zuntz*, 2 Ala. 256 ; *Day v. Graham*, 1 Gilman 446 ; *Wimberly v. Mayberry*, 94 Ala. 255 ; *Jenkins v. Merriweather*, 109 Ill. 647; *State Bank v. Noland*, 13 Ark. 299 ; 2 Freeman on Executions, § 310.

4.   As applicable to this case,—if it should require further litigation in equity to reconcile differences the parties themselves are so competent to adjust,—we refer to the conclusions expressed in *Ray v. Womble*, 56 Ala. 32, *supra* that the purchaser in that case was entitled to the purchase money ; and if it had been applied to the satisfaction of the execution, the decree vacating the sale should secure it to him, with interest ; that it was not essential for the complainant to offer in his bill, to refund the purchase money ; that the sale was compulsory, distinguishable from that class of cases, in which a complainant, seeking the rescission of a contract, because of fraud or mistake, must offer to place the party with whom he dealt *in statu quo*, before a court of equity will be active for his relief ; that a resale was the right of complainant, though he was unable to pay the purchaser the money he had expended ; and that the court, in decreeing the vacation of the first sale, and ordering a resale, if necessary, because of the inability of the complainant to refund the purchase money, would of course fully protect the purchaser ; but that it could not be tolerated that a judicial sale, tainted with fraud, or a breach of official duty, oppressive and grossly unjust to an unfortunate debtor, should be permitted to stand, because of the debtor's inability to refund the purchase money.

For the reasons assigned, we must hold that the court of law was not competent to make the order it did in setting aside this sale.   The defendant must seek a remedy in another forum, if he finds it necessary to do so. The judgments of the court are reversed, and the causes remanded.

Reversed and remanded.

McClellan, J., dissenting.