178 So. 40

**DUNN v. PONCELER et al.**

4 Div. 976.

Supreme Court of Alabama.

Dec. 16, 1937.

Rehearing Denied Jan. 20, 1938.

Lange, Simpson & Brantley, of Birmingham, and Winn & Winn, of Clayton, for appellant.

Francis H. Inge, of Mobile, and Rushton, Crenshaw & Rushton, of Montgomery, for appellees.

KNIGHT, Justice.

Bill in equity by Mrs. Ella P. Pruett Ponceler, and another, to obtain a decree of the court adjudging certain sales of lands of complainants, made under executions against them, which were issued upon a judgment of the circuit court of Jefferson county, Ala., to be "void and of no effect," and to have the deeds executed to the purchaser canceled as clouds upon title of complainants.

In the bill as amended the complainants offer to pay the judgment in full, the interest thereon, and all costs. The purchaser, in each case, was the plaintiff in the judgment.

It appears from the bill that Maude Dunn, the respondent, recovered a judgment in the circuit court of Jefferson county on the 9th day of December, 1931, for the sum of $2,948.15, and that upon this judgment the plaintiff procured a writ of execution to be issued and placed in the hands of the sheriff of Barbour county, Ala., and that, in execution of said execution, the said sheriff levied upon as the property of the judgment debtors, two pieces of real estate, situated in Barbour county; one piece being locally known as the "Browder Pruett Pecan Grove" containing 100 acres, more or less; and the

second piece of property was a certain described residence and lot, on Eufaula street, in the town of Clayton, Ala. All of which property the sheriff of Barbour county sold under said execution and levy on June 20, 1932, and at the sale the respondent, plaintiff in the judgment, became the purchaser. The 100-acre tract was sold to respondent for $100, and the residence property was sold to her for the sum of $10.

The bill avers that 100-acre tract was "planted in grafted pecan trees, between fifteen and twenty years of age, and that this tract was worth not less than $6,000.-00" on the date of the sale, and that the annual income from said Pecan Grove for the last few years has been "between one and three thousand dollars; and that the said residence lot was worth not less than $1500.00."

That after the sale of the above properties, the respondent Dunn procured an alias writ of execution to be issued upon said judgment, and placed in the hands of the sheriff of Barbour county, and that under this execution the said sheriff levied upon and sold the following properties of the complainants, located in said county, viz.: Parcel C, a plantation containing 577 acres; Parcel D, a house and lot (in negro quarter east of depot) in the said town of Clayton, Ala.; Parcel E, a certain tract of land with a dwelling on it, in the town of Clayton, Ala.; and Parcel F, a vacant lot in the town of Clayton, fully described. At this sale, all of said property was bought by the respondent, plaintiff in execution, and for the following amounts: For the plantation, 577 acres, the price paid was $75; for the Parcel D, $25; for Parcel E, $25; and for Parcel F, $15. Deeds were duly executed to the purchaser by the sheriff. The deed under the first-mentioned sale was executed to the purchaser on June 20, 1932 (date of sale), and recorded on July 2, 1932. Under the second purchase, deed was executed on August 1 (date of sale) and filed for record on August 4, 1932.

It is averred in the bill that the plantation containing 577 acres—Parcel C—"was at the date of the sale and still is" worth not less than $10 per acre; that Parcel D was and still is worth $500; and that Parcel E was then and still is worth not less than $200.

The bill avers that the amounts at which said properties—the parcels sold on June 20, 1932, as well as the parcels sold on

August 1, 1932—were bid in and bought by respondent "were so inadequate as to be glaring and gross so as to shock the understanding and conscience of an honest and just man."

It is further made to appear from the averments of the bill that respondent, after her purchase, the exact date is not disclosed, entered upon and took possession of all of said property, except the residence on Eufaula street in the city of Clayton, Ala., and has had possession of the properties for about four years, and during which time she has collected rents and incomes therefrom amounting reasonably to $1,000 per year.

It further appears from the bill that the complainants on June 9, 1933, as executrices and trustees under the will of O. B. Pruett, deceased, instituted an action of ejectment in the circuit court of Barbour county, Ala., against the respondent seeking to recover said property. And here we quote from the bill: "Oratrices were advised and believed that under terms of the will of O. B. Pruett, deceased, under whom complainants claim title thereto, said lands were not subject to levy and execution under said judgment obtained against them by the respondent, Maude Dunn, in the Circuit Court of Jefferson County, Alabama, and such contention on the part of these complainants was upheld by the said Circuit Court of Barbour County, Alabama, but on appeal to the Supreme Court of Alabama, that Court, on, to-wit, the 9th day of May, 1935 [230 Ala. 375, 161 So. 450], rendered a judgment reversing the said judgment of the Circuit Court of Barbour County, Alabama, and in an opinion accompanying said judgment, did hold that said land was subject to the lien of the judgment of said Maude Dunn and was liable to be sold in satisfaction thereof. As stated above, oratrices were advised and believed that said property was not subject to sale under said judgment of respondent, and acting upon said advice and belief, did not take any steps to redeem said property from said sheriff's sale as permitted by the statutes of Alabama in such cases made and provided. Oratrices further aver that the said respondent, Maude Dunn, is still in the possession of said property and that the rights of no innocent purchaser or subsequent lienors are involved in this suit."

It is further averred that by reason of the purchase of complainants' property, at the grossly inadequate aggregate price of $250, the respondent has only credited said judgment with that amount of money, and that she is now threatening to have other executions issued on said judgment in an effort to reach other properties of complainants; and that this purpose will be accomplished unless the respondent is restrained by the orders of this court. Complainants pray for temporary and permanent injunction, with offer to pay the judgment in full, with interest to date, and cost, upon respondent's reconveying the properties to the complainants. And complainants make the further offer: "And the complainants do now specifically offer to pay (and they are ready, able and willing so to do), into this court or the Registry thereof, there to abide the judgment or the further orders either interlocutory or final, of this Honorable Court, a sum equal to the amount of respondent's judgment, with lawful interest to the date of such payment as a condition precedent to the granting of a temporary injunction as hereinafter prayed for or as a condition precedent to any other relief herein sought; the complainants hereby repeating and reiterating their desire to do equity by paying said judgment, with interest and costs, desiring only to be protected against a double satisfaction thereof."

To the bill as originally filed, and to the bill as amended, the respondent filed numerous grounds of demurrer, taking the points: (1) That the circuit court of Barbour county (in equity) was without jurisdiction to entertain the bill; (2) res adjudicata; (3) laches; (4) statute of limitations; and (5) multifariousness.

The court overruled the respondent's demurrers, and from this decree the present appeal is prosecuted.

We are not impressed that there is any merit in those grounds of demurrer which take the point that, inasmuch as the judgment was rendered by the circuit court of Jefferson county, and the executions under which the sales were made were issued out of that court and were returnable to that court, the circuit court of Jefferson county had exclusive jurisdiction in the premises.

Appellant's argument would unquestionably be sound, if the sole purpose of this suit was to have the sales vacated on account of the wrongs charged, and no other relief was necessary to protect the complainants in the full enjoyment of their

property, without danger of further embarrassment, due to the presence upon the records of the sheriff's deeds, or due to the possession of such deeds by the respondent appellant. We say this, because all "courts have full power over their officers making execution sales, and whenever satisfied that a sale made under legal process is infected with fraud, oppression, irregularity, or error to the injury of either party, the sale will be set aside." But the court which rendered this judgment was sitting as a law court, without equity powers, and this court could not, after entering a proper order vacating the sale, proceed further to order the cancellation of the conveyances upon the records, as clouds upon the title of the complainants. The law court could go so far, but no further than to vacate the sale.

This court, in the case of Lockett, Adm'r, v. Hurt et al., 57 Ala. 198, in an opinion by Brickell, C. J., announced the following rule, which seems to have been steadfastly followed by this court: "The power of a court of law to vacate a sale of land, made under its process, because of irregularity, or illegality, or fraud, injurious to the parties, or to their privies in estate, or in interest, has been frequently recognized and affirmed by the decisions of this court. Mobile Cotton Press Co. v. Moore, 9 Port. 679; Lee v. Davis, 16 Ala. 516; Abercrombie v. Conner, 10 Ala. 293; McCaskell v. Lee, 39 Ala. 131; Henderson v. Sublett, 21 Ala. 626; Lankford v. Jackson, 21 Ala. 650. If the sale is impeached because of irregularities merely, the jurisdiction of the court of law to vacate it, is exclusive. There must be fraud or collusion, or an inability of the court of law to furnish adequate relief, to justify the interference of a court of equity. The correction of errors or irregularities in the use of legal process, or in the judgments of courts of law, is not within the province of equity.—Shottenkirk v. Wheeler, 3 Johns.Ch. [(N.Y.) 275] 280; Cavenaugh v. Jakeway, Walk.Ch. (Mich.) 344. *If the sale has been followed by a conveyance, casting a cloud on the title, a court of law is incompetent to decree and compel the cancellation of such conveyance, and if the cancellation is necessary to quiet the title, and prevent future litigation, a court of equity will intervene because of the inadequacy of legal remedies.* 2 Story's Eq. § 692; Bromley v. Holland, 7 Vesey 18. [Italics supplied.]"

As pointed out by this court, in the case of Ray's Adm'r v. Womble, 56 Ala. 32: "The sale was followed by the execution of deeds by the sheriff, which are a cloud on the title, the cancellation of which is within the exclusive jurisdiction of a court of equity. The power of a court of law would be exhausted, when the sale was vacated. The deed would remain in the possession of the purchaser, and could, at any time, be used as evidence by him in an action for the recovery of the lands, compelling the complainant, or those claiming under him, to *introduce the evidence of the vacation of the sale, to repel its operation and effect as evidence of title. The remedy at law is not, therefore, adequate, and a court of equity had jurisdiction of the case made by the original bill.— Lockett v. Hurt, at the present term."* (Italics supplied.)

To the same effect is the holding in the case of Anniston Pipe Works v. Williams, 106 Ala. 324, 18 So. 111, 54 Am.St.Rep. 51.

Where, therefore, there has been a sale of property under judicial process, and a deed has been executed to the purchaser, and the circumstances attending the sale are such as render the sale voidable at the election of the execution defendant, a court of equity will entertain a bill to vacate the sale, and cancel the deed as a cloud upon the debtor's title.

But it is insisted that the court will only entertain such a bill when brought by one in possession. There is no merit in this contention, as we shall attempt to demonstrate.

On its face, the deed purports to be efficacious for all purposes. As a matter of fact the circumstance that renders each of the deeds voidable is in essence a fraud going to the consideration and inducement of each of the instruments, and not to their execution. It was the plain duty of the sheriff not to have accepted bids so grossly inadequate as the bill discloses in this case. In the circumstances which confronted him, with only one bid, and that so grossly inadequate as to shock the conscience of a fair and honest man, it was the sheriff's duty to have postponed the sale, returning the execution, stating the facts, and that the lands had not been sold for want of bidders. Ray's Adm'r v. Womble, supra. This he did not do, but proceeded to accept bids which he must have known at the time were grossly inade-

quate. The sales under such circumstances were, as said in the case of Ray's Adm'r v. Womble, supra, "mere spoliation, and not the execution of the process of the court."

The sheriff had levied upon the lands as the property of the execution debtors. He must have been so impressed, or so advised, or surely he would not have dared to levy the process upon the property.

The respondent must have thought the lands were the property of her debtors, and if she knew the value of' the same, she must have known that the sheriff was violating a positive duty in making a sale to her for such a price. But if she did not know the extent of the debtors' title, or the value of the land, she was *"engaging in a speculation in which gain might be very large, while the loss, if loss followed, would be inconsiderable. In neither attitude, is he entitled to the favorable consideration of the court."* Ray's Adm'r v. Womble, supra.

The rule obtaining in this jurisdiction, and which has been recognized and followed by this court for more than an hundred years, is that mere inadequacy of price, not sufficient to create the presumption of fraud, will not vitiate a judicial decision, but when the inadequacy is so glaring and gross as at once to shock the understanding and conscience of an honest and just man, it will, of itself, authorize the court to set aside the sale. Henderson et al. v. Sublett et al., 21 Ala.' 626; Ray's Adm'r v. Womble, supra; Danforth v. Burchfield, 201 Ala. 550, 78 So. 904; and Powell v. Governor, 9 Ala. 36, 39.

Under the facts averred in the bill a legal fraud was perpetrated upon complainants going to the consideration and inducement of the instruments—sheriff's deeds—rendering the sales and deeds executed thereunder voidable at the election of the execution debtors, and a court of equity, on application of the aggrieved party, made within a reasonable time, will intervene to vacate the sales and cancel the deeds as clouds upon the title of the debtors. This, the court will do, regardless of complainants' want of possession. Davidson v. Brown et al., 215 Ala. 205, 110 So. 384, 386; Shipman v. Furniss, 69 Ala. 555, 562, 563, 44 Am.Rep. 528; Hafer v. Cole, 176 Ala. 242, 249, 57 So. 757, and Baker v. Maxwell, 99 Ala. 558, 14 So. 468.

And why is this true? The question is answered in Davidson v. Brown et al., supra, where it is observed: "In such a case there is no remedy by ejectment at law, because fraud not going to the execution of the deed, as by misreading it to the grantee, or misrepresenting its contents, or the like, is not available in a court of law to nullify the deed, and rescission by the vendor, though effective in other respects, does not revest in him the title to land once fully vested in the purchaser. Swift v. Fitzhugh, 9 Port. 39, 63, 64; Mordecai v. Tankersly, 1 Ala. 100; Giles v. Williams, 3 Ala. 316, 317, 37 Am.Dec. 692; Costillo v. Thompson, 9 Ala. 937, 946; Thompson v. Drake, 32 Ala. 99, 103; 18 Corp.Jur. 'Deeds,' 227, 228, § 147, citing numerous authorities. This principle seems to have been recognized in Brown v. Hunter, 121 Ala. 210, 212, 25 So. 924, where the foregoing cases are cited. Doubtless it has been lost sight of in some of our numerous decisions affirming the general rule that equity will not take jurisdiction to cancel a cloud on title unless the complainant shows that he is in possession of the land, but it has never been denied, so far as we are advised."

From the foregoing it will be seen that we are of the opinion that a court of equity has jurisdiction of the cause of action stated in bill, and the fact that *complainants are not in possession* of the property will not constitute a barrier to relief. Complainants could not recover in an action of ejectment. This being true, to deny them relief in equity would be tantamount to holding that while they have suffered an injury, the court will give them no remedy. Such is not the policy of the law, and such a holding would contravene one of 'the fundamental principles of equity jurisdiction, viz., to supply remedies in cases where the law courts give none.

The circuit court of Jefferson county being without jurisdiction to grant the full relief to which the complainants were entitled, under the averments of their bill, a resort to a court of equity, by original bill, became necessary. Where was the venue of such an action?

The complainants were citizens of Alabama; the respondent was also a citizen of the state and resided in Barbour county; and the lands, the subject-matter of the suit, are situated in Barbour county. Unquestionably, the suit was properly brought in Barbour county. Code 1923, § 6524; City Loan & Banking Co. v. Poole, 149 Ala. 164, 43 So. 13; Burrow v. Clifton, 186 Ala. 297, 65 So. 58.

■ There is no merit whatever in those grounds of demurrer taking the point that the judgment in the ejectment suit is res adjudicata. The parties were not the same, and in that court, and in that cause, the complainants could not have litigated the issues presented by the bill. Davidson v. Brown et al., supra; Dunn v. Ponceler et al., 230 Ala. 375, 161 So. 450.

This brings us to a consideration of those grounds of demurrer raising the question of laches.

■ It appears from the bill that the sale of the first two parcels of land—Parcels A and B—was made June 20, 1932, and the deed of the sheriff was executed the same day, and recorded July 2, 1932, and that the sale of Parcels C, D, E, and F, was made on August 1, 1932, and deed executed to purchaser on same day, and was recorded on August 4, 1932. The recordation of these instruments served to charge complainants with notice of the sale, and the price paid for the land. Washington v. Young, 224 Ala. 232, 139 So. 92; Peters Mineral Land Co. v. Hooper, 208 Ala. 324, 94 So. 606.

■ An excellent definition of "laches" is given in 21 Corpus Juris, pp. 210, 211: "Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; such neglect to assert a right as, taken in conjunction with the lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; such delay in enforcing one's rights as works disadvantage to another."

■ The equitable rule that the enforcement of a right may be barred by laches grows out of the maxim, "Vigilantibus non dormientibus, subvenieunt leges." Am. & Eng.Ency.Law, vol. 12, p. 534.

■ In this jurisdiction, as well as elsewhere, no definite limitation is fixed at which a court of equity must be called on to vacate a sale, but it is generally held that the complaining party must act with reasonable promptness, "dependent upon equitable principles and governed by the facts of each case." Washington v. Young, supra; Cowan v. Sapp, 74 Ala. 44; Ponder v. Cheeves, 90 Ala. 117, 7 So. 512; Jones v. Spear, 204 Ala. 402, 85 So. 472.

This court, in the case of Montgomery Light Co. et al. v. Lahey et al., 121 Ala. 131, 25 So. 1006, 1008, held: "Mere delay in the assertion of a right, without more, does not in itself constitute *laches*. Long delay, however, is strong evidence of acquiescence; and, when parties have acted or acquired rights by reason of such delays, courts of equity will hold the party delaying barred of his right of action by such delay or acquiescence. Courts of equity also act by analogy; as, where in other cases, under similar conditions, a demand would be barred by some statute of limitation, a court of equity would apply the doctrine of *laches* on account of the failure to act within the period fixed by the statute as a bar, or, in the absence of a statute from which to draw an analogy, after *long* and *unreasonable delay* would treat the claim as a stale demand. The doctrine of *laches,* when not applied by analogy to some statute creating a bar, or upon the theory of a stale demand, *must rest* upon the doctrine of estoppel, where rights have arisen upon *presumed acquiescence* from *unreasonable delay.*" (Italics supplied.)

It was observed in our recent case of Washington v. Young, supra, which was a case to vacate a sale under execution, which involved a delay of twenty-seven years, that the rule of *laches* or limitations was analogous to the known rules of a court of equity in granting relief to a mortgagor seeking to avoid a purchase by a mortgagee at his own sale without authority in the power. That *without sufficient excuse,* such time is fixed at two years. Of course, what will be regarded as a sufficient excuse depends upon the circumstances of the case.

In Amer. and Eng. Encl. of Law, it is broadly stated in the text that if the matter in dispute between the parties has, during the time when the delay occurred, been the subject of litigation, the plaintiff's delay is sufficiently excused. This pronouncement seems to be supported by the holdings in the cases of Comins v. Culver, 35 N.J.Eq. 94; Galloway v. Barr, 12 Ohio 354; Hunt v. Smith, 3 Rich.Eq., S.C., 465; Pacific R. Co. of Missouri v. Missouri Pacific R. Co., 111 U.S. 505, 4 S.Ct. 583, 28 L.Ed. 498; Ensminger v. Powers, 108 U.S. 292, 2 S.Ct. 643, 27 L.Ed. 732.

In the last analysis, the limitation is not one fixed by any positive statute but is a judicial one, and the whole theory of the

limitation, therefore, rests on the presumption of ratification.

Bearing in mind the foregoing as respects *laches,* can it be said that the complainants, by their delay, have been barred of the enforcement of their equitable rights in this case?, We think not.

Upon her purchase of the property at the execution sale, the respondent took possession of the property. On June 9, 1933, thereafter, these complainants, in their capacity of executrices and trustees under the will of O. B. Pruett, deceased, upon the advice of their counsel, brought ejectment against the respondent for the recovery of the property. In the circuit court, the complainants were successful. From this judgment the respondent prosecuted an appeal to this court, and this appeal resulted in the reversal of the judgment of the circuit court. We held on that appeal that the complainants acquired the legal title to the property under the will of O. B. Pruett, deceased; that it was subject to levy and sale under respondent's judgment and execution, and that by the sale and the purchase thereat, the respondent acquired the legal title, and was entitled to recover. Dunn v. Ponceler et al., 230 Ala. 375, 161 So. 450. Upon remandment of the cause, judgment was rendered for respondent, and respondent again took possession of the property and is now in possession of same. The decision of this court was rendered on May 9, 1935, and on July 7, 1936, the present suit was filed. There has been no change in the title or possession, and no rights of any third person are involved.

Upon these facts we are unable to say, as a legal conclusion, that the complainants, by their delay, have acquiesced in the fraudulent sale of their property, or that from their conduct, in the delay that has occurred, a ratification must be presumed. Their whole conduct negatives such a presumption. See, McCollum v. Hubbert and Caple, 13 Ala. 289.

We are, therefore, at the conclusion that the demurrer raising the question of *laches* was not well taken, and was properly overruled.

We have examined all other grounds of demurrer here pressed upon our attention, and are of the opinion that there is no merit in them. A discussion of the same is unnecessary, as the foregoing opinion fully expresses our views on the equity of the bill, and the right of the complainants to prosecute the same at this time. It is to be noticed that the demurrers are directed to the bill as a whole.

The decree of the circuit court, being in accord with the views above expressed, is due to be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.